JOHN C. SOUTHWICK, Respondent, *v.* THE FIRST NATIONAL BANK OF MEMPHIS, Appellant.

Where plaintiff fails to prove the cause of action set up in his complaint, and the objection is raised upon the trial, and no amendment of the pleading is asked for or ordered, a judgment in plaintiff's favor, upon a cause of action entirely separate and distinct from that alleged, cannot be sustained on appeal.

In such case the pleadings cannot, after the trial, be conformed to the proof. It is no answer to the objection that defendant was probably not misled.

The obligation of a party to refund money, voluntarily paid to him by mistake, can arise only after notification of the mistake, and demand of payment.

Where a demand is necessary it is not excused by showing that defendant would not probably have complied if one had been made ; and it matters not that defendant, on the trial, contests plaintiff's right to recover.

Where a bill of exchange is paid to one who holds it in good faith and for value, he cannot be called upon to account for the money paid, upon proof that in transactions between the drawer and drawee, of which he had no knowledge or means of knowledge, there has been some fraud or mistake to the injury of the drawee ; and this, although the holder, not

having parted with value at the time when he took the draft, could not have enforced it against the drawee, even after acceptance.

This rule is based upon principles of public policy.

In March, 1873, T., of the firm of S., T. & Co., doing business at Memphis, drew his draft upon that firm, payable to the order of J. M. N. & Son, a Boston firm. The draft was accepted by the drawees, payable at Memphis in forty days. The holder sent the draft to Memphis for collection. Before it fell due the drawees notified the payees that they would not be able to meet it, and requested permission to draw for the amount. Permission was granted by telegram to draw at sight to pay said draft. S., T. & Co. thereupon drew upon J. N. M. & Son a sight draft for the amount. This draft was discounted by defendant, and with the assent of the drawers the proceeds were placed to their credit, their account with defendant being at that time overdrawn to more than the amount. J. N. M. & Son accepted the new draft on presentation, and subsequently paid it. S., T. & Co. drew a check on defendant to pay the old draft which it refused to honor, and refused to pay said draft when presented. S., T. & Co. soon after became insolvent. In an action to recover the amount of the new draft it was not alleged, nor was it proved, that a demand or offer to return the draft was first made, or that defendant had any knowledge of the telegram, or the purpose for which J. N. M. & Son authorized the drawing of the new draft. The court directed a verdict for plaintiff. *Held*, error ; that neither a cause of action for a conversion of the draft, nor one to recover back moneys paid by mistake, was established.

The complaint alleged that defendant was notified of the purpose for which the new draft was authorized to be drawn; that it received it, agreeing to collect and apply the proceeds for that purpose, but that it refused so to do. *Held*, that the court erred in denying a motion for a nonsuit, as plaintiff failed to prove the cause of action alleged in the complaint.

*It seems*, that had the complaint been sufficient, and had a proper demand been made, plaintiff would not have been entitled to recover.

*Comstock* v. *Hier* (73 N. Y. 269), distinguished.

To entitle a party to relief, on the ground of mistake, it must be a mistake as to some existing fact, not as to something to occur in the future ; and it must be a mistake as to some fact bearing directly, not remotely, upon the act against which relief is sought.

*Southwick* v. *First National Bank* (20 Hun, 349), reversed.

(Argued February 9, 1881 ; decided March 8, 1881.)

Appeal from judgment of the General Term of the Supreme Court, in the first judicial department, in favor of plaintiff, entered upon an order made the first Monday of January, 1880,

overruling defendant's exceptions, and directing judgment upon a verdict. (Reported below, 20 Hun, 349.)

The nature of the action and the material facts are set forth in the opinion.

*Francis C. Barlow* for appellant. Where accommodation paper is diverted, it can only be enforced by a *bona fide* holder for value. (*Justh* v. *National Bk. of the Commonwealth*, 56 N. Y. 478, 484; *Stephens* v. *Bd. of Education*, 79 id. 183; *Gammon* v. *Butler*, 48 Me. 344; *Skinner* v. *Merchants' Bk.*, 4 Allen, 290, 294.) Discounting a note, and discharging a prior debt with the proceeds, is the same thing in legal effect as the payment of money on the debt. (Edwards on Bills [ed. of 1857], 322.) The presumption was that the draft was drawn against funds. (*Griffith* v. *Reed*, 21 Wend. 501.) One who takes an unaccepted draft has the same rights against the person who afterward accepts it, as if it were accepted at the time. (*Bk. of Louisville* v. *Ellery*, 34 Barb. 630; *Mechanics' Bk.* v. *Livingston*, 33 id. 458.) The mistake of fact which enables the payer to recover must be a mistake "as to a fact, which, if true, would have rendered the party paying liable to pay the money, and not one as to a fact, which, if true, would have rendered it desirable that he should pay it." (*Aiken* v. *Short*, 1 H. & N. 209, 213.) The mistake must be as to a present existing fact which affects the liability of the payer to pay. (*Dambman* v. *Schulting*, 75 N. Y. 63; *Gallager* v. *Brunel*, 6 Cow. 346.) The collection of the note was not a conversion of it. (*Walter* v. *Bennett*, 16 N. Y. 250; *Stall* v. *Catskill Bk.*, 18 Wend. 478.) The declarations of the defendant's cashier, having been made more than a year after the event, and not being shown to have been a part of any *res gestæ*, in no way bind or affect the defendant, as admissions. (*Luby* v. *R. R. Co.*, 17 N. Y. 131; *Baptist Church* v. *Ins. Co.*, 23 How. 448; *S. C.*, 28 N. Y. 153, 160; *Bank* v. *Stewart*, 37 Me. 519.) The burden is upon one who offers the declarations of an agent, to show that they were made at a time, and in a connection, which makes them a part of the *res gestæ*.

(*Baptist Church* v. *Ins. Co.*, 23 How. 450.) The plaintiff cannot recover because no proper demand was made prior to suit. (*Powers* v. *Bassford*, 19 How. 309; *Sluyter* v. *Williams*, 37 id. 109; *Stacy* v. *Graham*, 14 N. Y. 497; *Freeman* v. *Jeffrees*, L. R., 4 Exch. 189, 200, 201; *Stevens* v. *Bd. of Education*, 3 Hun, 712; Chitty on Contracts [11th Am. ed.], 477; *Doe* v. *Walters*, 10 B. & C. 626.) The judgment should be reversed, because there has been a recovery on a cause of action which not only is not declared on, but which is absolutely fatal to that declared on. · (*Lawrence* v. *Fox*, 20 N. Y. 268; new Code, § 519; *Bates* v. *Rosekrans*, 23 How. 98, 101, 102, 103; 37 N. Y. 409, 412; *Beach* v. *Steamboat Co.*, 18 How. 336; *Equitable Ass. Co.* v. *Cuyler*, 75 N. Y. 511, 514, 515; *Wright* v. *Delafield*, 25 id. 266; *Simmons* v. *Kayser*, 43 N. Y. Super. Ct. 137, 138.) The doctrine of "conforming the pleadings to the proof" does not apply in such a case. (New Code, § 541.) The recovery must be *secundum allegata et probata*. (*Beard* v. *Yates*, 2 Hun, 466; *Peck* v. *Root*, 5 id. 547, 550; *Barnes* v. *Quigley*, 59 N. Y. 265, 268.) Inconsistent actions cannot be joined. (*Smith* v. *Hallock*, 8 How. 78; *Sweet* v. *Ingersen*, 12 id. 331; *Budd* v. *Bingham*, 18 Barb. 494; *Lattin* v. *McCarthy*, 17 How. 239; new Code, § 539; *Hubbell* v. *Lerch*, 58 N. Y. 237.) The court has no jurisdiction. (*Crocker* v. *Marine Nat. Bk.*, 101 Mass. 240; *Tracy* v. *Cadle*, 11 Blatchf. 101.) Consent does not give jurisdiction. (*Tracy* v. *Cadle, ubi supra;* *U. S.* v. *Yates*, 6 How. [U. S.] 605; *Capron* v. *Van Norden*, 2 Cranch [Cir. Ct. R.], 126; *Heriot* v. *Davis*, 3 Woodbury & Minot, 229; *Heyer* v. *Burger*, Hoffman, 1; *Valarino* v. *Thompson*, 7 N. Y. 576.)

*John E. Burrill* for respondent. The rule in regard to drafts or notes diverted from the purpose to which they were restricted differs from that applicable to mere accommodation paper; and in the former case the receipt of the diverted paper, even in payment of a precedent debt, will not entitle the creditor to recover. (*Stalker* v. *McDonald*, 6 Hill, 93;

*Weaver* v. *Barden*, 49 N. Y. 293; *Comstock* v. *Hill*, 73 id. 269; *Haynes* v. *Rudd*, 24 N. Y. S. C. 477; *Coddington* v. *Bay*, 5 Johns. Ch. 54; *S. C.*, 20 Johns. 637; *Stevens* v. *Corn. Ex. Bk.*, 3 Hun, 150; *Fulton Bk.* v. *Phenix Bk.*, 1 Hall, 562.) The acceptors of the draft having paid it under a mistake of fact, the plaintiff, as their assignee, was entitled to recover back the amount as so much money had and received to their use. (*Smith* v. *Macklin*, 4 Lans. 51; *Rider* v. *Powell*, 28 N. Y. 316; *Duncan* v. *Berlin*, 46 id. 685; *Kingston Bk.* v. *Eltinge*, 40 id. 395; *Merchants' Bk.* v. *National Eagle Bk.*, 101 Mass. 285; *Appleton Bk.* v. *McGilray*, 4 Gray [Mass.], 520; *Westerlo* v. *De Witt*, 36 N. Y. 340; *Martin* v. *McCormick*, 8 id. 331; *Mills* v. *Alderbury*, 3 Exch. 593; *Chester* v. *Bank*, 16 N. Y. 336; *Lake* v. *Artisans' Bk.*, 3 Keyes, 276, 278; *Canal Bk.* v. *Bk. of Albany*, 1 Hill, 287; *Goddard* v. *Merchants' Bk.*, 2 Sandf. 247; *Rheel* v. *Hicks*, 25 N. Y. 289.) The fact, that by the exercise of proper diligence the assignor of plaintiff might have avoided the error, is no defense. (*Kingston Bk.* v. *Eltinge*, 40 N. Y. 395; *Nat. Life Co.* v. *Jones*, 1 N. Y. S. C. [T. & C.] 470; *Duncan* v. *Berlin*, 46 N. Y. 685; *S. C.*, 11 Abb. Pr. [N. S.] 116.) The rule that the plaintiff's recovery may be defeated by showing that the defendant has a counter equity to retain the money is not law in this State. (*Canaday* v. *Stiger*, 55 N. Y. 453.) The fact that the defendant received the proceeds of the draft in money, and that the money when so received was applied to the credit of Southworth, Thayer & Co., does not prevent the plaintiff from recovering it back, when it was paid by him to defendant under mistake, and when the defendant will not be prejudiced by canceling the credit which he has given to Southworth, Thayer & Co. (*Van Allen* v. *Am. Nat. Bk.*, 52 N. Y. 8; *Tradesmen's Bk.* v. *Chem. Bk.*, 1 Paige, 302; *Mechanics' Bk.* v. *Levy*, 3 id. 606; *Skinner* v. *Merchants' Bk.*, 4 Allen, 290; *Atlantic* v. *Same*, 10 Gray, 532.) As no question was submitted to the jury, and in the disposition of the case made at the trial all the evidence covered by the objections taken by defendant was either immaterial, or the fact was otherwise abundantly proved,

and the result was not in any wise affected thereby, its reception, even if erroneous, is no ground for a new trial. (*Sherman v. Johnson*, 56 Barb. 59–62; *Bennett* v. *Austin*, 5 Hun, 536; *Downe* v. *N. Y. C. R. R. Co.*, 56 N. Y. 664; *Rowland* v. *Hegeman*, 59 id. 643.) As the complaint contained all the allegations necessary, with the proof in the case, to entitle the plaintiff to recover, the allegation that the defendant agreed to apply the proceeds of the draft in a particular way may be rejected as surplusage, and does not prevent the plaintiff from recovering on the other allegations. (*Byxbie* v. *Wood*, 24 N. Y. 607–610.) The General Term had authority to conform the pleadings to the proof, and as there was no dispute in regard to the facts, and there being no evidence or pretense of surprise, its authority was properly exercised. (New Code, 723.) Any defect in the pleadings, such as is alleged, is cured by the Code (§ 721, subd. 5–8). The fact that the defendant's bank was a National bank, organized under the National Banking Act, was wholly immaterial, and no defense could be based thereon, except that of jurisdiction, which is *res adjudicata* in this State, and which, moreover, was waived by the general appearance and answer of the defendant. (*Cooke* v. *State Bk.*, 52 N. Y. 96; *Robinson* v. *National Bk.*, 22 Alb. L. J. 15.)

EARL, J. The defendant claims that the plaintiff failed upon the trial to establish by proof the cause of action alleged in his complaint. To determine whether this claim is well founded, we will first see what facts were proved, and thus ascertain for what cause of action the recovery was had, and then see if such cause of action is fairly embraced within the facts alleged in the complaint.

The material facts, as proved, are as follows: Southwick, Thayer & Co. were a firm doing business in Memphis, Tenn., and J. N. Merriam & Son were a firm doing business in Boston. On the 13th day of March, 1873, George H. Thayer, a member of the Memphis firm, drew a draft upon that firm, which was accepted by them, for $2,500, payable in Memphis in forty days, to the order of the Boston firm. The latter firm

indorsed the draft to F. P. Merriam, who became the owner and holder thereof, and he sent the draft to Memphis for collection. Shortly prior to the maturity of that draft A. N. Merriam, of the Boston firm, being at Memphis, was notified by the Memphis firm that probably they would not be able to pay the draft at maturity, and was asked if, in that case, they might draw on the Boston firm a new draft, the proceeds of which should be used to take up the old draft. This request was assented to on condition that they should not draw the new draft without special authority. Early in May the Memphis firm notified the Boston firm that they would not be able to take up the old draft, and requested permission to draw. Whereupon, on the fifth day of May, the Boston firm sent them a telegram, as follows: "You may draw upon us at sight for $2,500, to pay draft in our favor." On the next day the Memphis firm drew upon the Boston firm a sight draft for $2,500, payable to their own order and indorsed by them; and their book-keeper, Wiggs, on their behalf, took it to the defendant's bank, with which they had had previous dealings and an account, and asked defendant's cashier if he would discount it and let his firm check out the proceeds. This the cashier refused, but he said he would take the draft and place it to the credit of the drawers on over checks owing by them to the bank. Wiggs then consulted the drawers, and on the same day, with their assent, delivered the draft to the bank to be discounted, the proceeds to be credited to them in account, and they were thus credited. At that time the drawers were indebted to the bank in a much larger sum than the amount of the draft. The bank had no knowledge of the telegram authorizing the drawing of the draft, or of the purpose for which the drawers were authorized to draw. The bank thus became a *bona fide* holder of the draft for value, but not for value parted with at the time. Several days subsequently the Memphis firm drew a check on the defendant to pay the old draft, and it refused to pay the check, on the ground that their account was not then good.

After receiving the new draft and crediting its proceeds to

the account of the drawers, the defendant sent it to its corresponding bank in Boston for collection. That bank presented it to the drawees for acceptance and payment, and it was accepted May 10th and paid May 13th, and the proceeds were credited by the Boston bank to the defendant, and were by it subsequently checked out in the course of its business.

The Memphis firm was not, at the time of the negotiation of the new draft, known to be insolvent, but they became openly insolvent in the latter part of June or the fore part of July, 1873, and were subsequently put into bankruptcy. This suit was not commenced earlier than the 29th day of July. At the latter date the Boston firm and F. P. Merriam assigned all their claims against the defendant to the plaintiff.

Upon these facts the court directed a verdict for the plaintiff, and its decision was probably based upon the theory that the defendant could be charged with a wrongful conversion of the draft, or upon the theory that the drawees paid the draft under a mistake of facts. In the opinion pronounced at the General Term, the judgment entered upon the verdict was sustained upon the latter theory, and the learned counsel for the plaintiff, in his argument before us, attempted to sustain it upon both theories.

It is entirely clear that no cause of action for a conversion of the draft, or to recover back money paid by mistake, is alleged in the complaint. On the contrary, the facts alleged show that there was no wrongful conversion of the draft, and that the money was paid under no mistake of any existing facts, and no mistake is in any way alleged or to be inferred from the language used.

The complaint first alleges the making of the old draft, and that the same was owned and held by F. P. Merriam; that it had matured and become payable and had been forwarded to Memphis for collection; that the Boston firm authorized the new draft to be drawn upon them in order to provide funds necessary to pay the old draft, and agreed to pay such draft upon condition that the proceeds should be used for that purpose only; that the new draft was thereupon drawn and deliv-

ered to the defendant, which was notified of the object and purpose for which the draft was authorized to be drawn, and for which the same was drawn, and that it received the draft and undertook and agreed to collect the same for the purpose aforesaid, and that the proceeds thereof, when collected, should be applied to the payment thereof; that the draft was accepted and paid for the object and purpose and upon the condition aforesaid, but that the defendant neglected and refused to apply the amount paid upon the old draft, although requested so to do; that the draft remains unpaid and that J. N. Merriam & Co. and F. P. Merriam have sold and transferred the same and the moneys paid thereon to the plaintiff, together with all claim and cause of action against the defendant upon or by reason thereof, or by reason of the premises and the matters before alleged; and judgment is demanded for $2,500, and interest from May 6, 1873.

It is thus seen that the only cause of action alleged in the complaint is based upon the promise of the defendant to take the draft, collect it and apply the proceeds upon the old draft. This is plainly and explicitly set out. The proof entirely failed to establish such a cause of action, and the objection that it did so fail was plainly and pointedly, several times, taken at the trial.

The Code requires that the complaint must contain a plain and concise statement of the facts constituting the cause of action, and that the pleadings must be liberally construed with a view to substantial justice between the parties; and in section 723 ample power is conferred upon the court to amend pleadings at any stage of the action, and where the amendment does not change substantially the claim or defense, to conform the pleadings to the facts proved. Here, although the defect in the complaint was pointed out in due time upon the trial, no amendment was asked for or ordered. This is not a case where the pleadings can after the trial be conformed to the proof, as such an amendment would change substantially the claim of the plaintiff as alleged. This is not a case of mere variance or mere defect, but a case of failure to prove the cause of action

alleged in its entire scope.   Pleadings and a distinct issue are essential in every system of jurisprudence, and there can be no orderly administration of justice without them.   If a party can allege one cause of action and then recover upon another, his complaint will serve no useful purpose, but rather to ensnare and mislead his adversary.   Here the defendant was brought into court to answer a complaint that he had violated his promise to apply the proceeds of the draft, and he took issue upon the alleged promise and when he came to trial he was held liable, not for any breach of promise but for the money paid by the Boston firm on the ground of a conversion of the draft, or the mistake of facts which induced the payment of the money.   The cause of action alleged was one held by the plaintiff, as assignee of F. P. Merriam, for the breach of the promise to pay the old draft owned by him.   The cause of action for which the recovery was had was one which the plaintiff held, as assignee of J. N. Merriam & Co., for the recovery of the money paid by them upon the new draft.

It is no answer to this objection that the defendant was probably not misled in its defense.   A defendant may learn outside of the complaint what he is sued for and thus may be ready to meet plaintiff's claim upon the trial.   He may even know precisely what he is sued for when the summons alone is served upon him.   Yet it is his right to have a complaint, to learn from that what he is sued for and to insist that that shall state the cause of action which he is called upon to answer, and when a plaintiff fails to establish the cause of action alleged the defendant is not to be deprived of his objection to a recovery by any assumption or upon any speculation that he has not been injured.

But passing this point the defendant further contends that the plaintiff ought to have proved a demand upon it for the draft, or the money paid thereon, before commencement of the suit; but that he failed to prove such demand.

It is not disputed by the plaintiff that such a demand was necessary unless it was in some way waived by the defendant, or unless it was in some way estopped from insisting upon

a demand.    Whether the action be treated as one for the conversion of the draft, or of the money paid thereon, or for the recovery of money paid by mistake, a demand was a prerequisite to the maintenance of the action against the defendant, who lawfully and innocently received the draft and the money paid thereon.    The obligation of a party to refund money voluntarily paid by mistake can arise only after the notification of the mistake and a demand of payment.  (*Powers* v. *Bassford*, 19 How. Pr. 309; *Sluyter* v. *Williams*, 37 id. 109; *Stephens* v. *Board of Education*, 3 Hun, 712; *Stacy* v. *Graham*, 14 N. Y. 492; *Freeman* v. *Jeffries*, L. R., 4 Exch. 189, 200, 201.)

Here the requisite demand was not only not proved, but was not alleged in the complaint. The only demand alleged was a request to apply the proceeds of the new draft upon the old one in pursuance of the alleged promise of the defendant.   No demand to pay the money to the plaintiff or his assignors is alleged, and none was proved to have been made before the commencement of the action.   There was no proof that, before the commencement of the action, defendant had any knowledge of the telegram of May 6th, or of the purpose for which the drawers were authorized to draw the new draft, or of any claim that the drawees had paid the draft under any mistake, or that they claimed that the money paid should be refunded to them.   There is no proof even that it had any knowledge that the draft or its proceeds had been improperly diverted. It is shown that it refused to pay a check drawn to take up the old draft and declined to pay that draft when presented, but it is not shown that they were, at the time when the check and draft were presented for payment, or at any other time before the commencement of the suit, informed of the circumstances now relied upon by the plaintiff, connecting that draft with the new one.

The plaintiff, at the trial, attempted to show a demand or an excuse for not making one by two letters, and unless such demand or excuse is found in these letters, it is not found in the case.   The first letter is dated May 13, 1873, and was ad-

dressed by the Boston firm to W. W. Thacher, cashier of the defendant at Memphis.   It is as follows:

"SIR — We are much surprised at the communication we have received this day from S. T. & Co., relating to the position you have taken about the draft on us, viz. : not honoring their checks and allowing them to pay their draft in our favor.

You had our explicit authority to draw on us (purpose specified also), and you have never yet had occasion rightly to doubt our honor and ability to pay all we contracted to, to the utmost farthing.   We, of course, recognize your right to decline to cash their draft ; that must be as your own judgment dictates. But to obtain their obligations and retain the funds for two weeks, thus putting us to annoyance and inconvenience without just cause, is not in accord with our New England ideas of honorable business dealing.   All through this unfortunate affair we have tried to act toward you in a perfectly frank and honorable manner.   We showed our hand to Mr. Davis, and offered him every thing we could and certainly don't "back water" now ; but we can't submit to transactions of this kind. We would like to hear why you seem to have lost confidence in us.   By letting S. T. & Co. pay our draft you don't hurt your case.

Answer.          Yours, etc.,
                              J. M. MERRIAM & SON."

Here is no intimation that the new draft or the money paid thereon had been diverted or wrongfully converted, and there is no notice of any mistake inducing the payment of the draft, and no demand of any kind.

To this letter Thacher replied under date of May 20, as follows:

" GENTLEMEN — Your favor of the 13th is before me and I do not exactly understand it.

Messrs. S. T. & Co. were overdrawn on our books, say $6,800 ; they deposited with me a sight draft on you for $2,500, which was placed to their credit and they were in-

formed at the time that no check would be allowed against it, but it must go to reduce their overdraft. I had no intention of taking the draft, except to reduce their account.

If you understand the transaction different, I would be pleased to hear from you and we will compare notes regarding it.

Respectfully, .

W. W. THACHER, *Cashier.*"

This was a perfectly frank and fair letter, explaining the situation, saying that he did not exactly understand the prior letter which was certainly obscure and confusing, and asking for information in case the writers of the prior letter understood the facts differently from what he stated them. This letter contained no refusal to comply with any demand if one had been made, and no position was taken therein which excused a demand, or precluded the defendant from insisting upon one. This, so far as appears, ended the correspondence between the parties, and the suit followed. It matters not that it is quite probable that the defendant would not have complied with a demand if one had been made, for that does not dispense with the necessity of making one. When a demand is necessary it is not excused by showing that the defendant would not probably have complied if one had been made. And it matters not that the defendant has, upon the trial, contested the plaintiff's right to recover. That has occurred since the commencement of the action, and the plaintiff's right of action must have been perfect when the suit was commenced.

The objection that no demand was made was distinctly taken on the trial, when the plaintiff offered in evidence the first letter, and in defendant's motion to nonsuit the plaintiff at the close of plaintiff's evidence, and again at the close of all the evidence.

We are therefore of opinion that the point we have just considered was well taken. But upon the assumption that the complaint is sufficient and that a proper demand was made we are of opinion that the facts proved did not warrant the verdict ordered.

Here there was no conversion of the draft by the defendant. It was delivered to it by the only persons at the time liable thereon. If the telegram of the drawees be regarded as an unconditional promise in writing to accept the draft it did not bind them as acceptors because the defendant did not receive the draft "upon the faith" of the telegram. (1 R. S. 769, § 8; *Greele* v. *Parker*, 5 Wend. 414; *Bk. of Michigan* v. *Ely*, 17 id. 508; *Barney* v. *Worthington*, 37 N. Y. 112; *Johnson* v. *Clark*, 39 id. 216.) After the defendant received the draft from the drawers it could hold it against them as drawers and indorsers thereof, and no one could control their dominion over it. The drawees could not have then sued it for the conversion or for the possession of the draft or to restrain any use which it might choose to make of it. After the defendant obtained the draft all it did with it was to present it for acceptance and payment to the drawees, and after payment it delivered the draft, as we must presume, to them. It thus parted with the possession of the draft to them and there was no wrongful conversion of it of which they could complain. And so this case is unlike the case of *Comstock* v. *Hier* (73 N. Y. 269), which is very much relied on by the learned counsel for the plaintiff. In that case Comstock was the indorser of the note which it was claimed Hier had wrongfully converted, and it was held that Comstock was in such relation to the note that he could sue for a wrongful conversion thereof, or for the proceeds received upon the wrongful conversion thereof. The recovery was there upheld on the theory of a wrongful conversion of the note. But this recovery cannot be upheld upon that theory.

The only other theory suggested for the maintenance of this action is that of mistake, and much can be plausibly and forcibly said in favor of this theory. It is certainly true that if the drawees had known what they now know, or if they had known that the proceeds of the draft were to be applied otherwise than upon the old draft, they would not have accepted or paid the draft. But were they so mistaken that they can reclaim the money voluntarily paid by them? It is not every mistake

that will lay the groundwork for relief.   It must be a mistake as to some existing fact, not as to something to happen or to be done in the future.   It must be a mistake as to some fact not remotely, but directly, bearing upon the act against which relief is sought. (*Dambmann* v. *Schulting*, 75 N. Y. 55.)  If it were the rule to relieve against mistakes as to remote or what are sometimes called extrinsic facts, great uncertainty and confusion would attend business transactions.   Here the draft was genuine, addressed to the drawees, who had authorized it to be drawn, and it was held by the defendant, which could lawfully receive payment thereof.   There was no mistake as to the intrinsic facts.   The facts that the drawers had not acted in good faith with the drawees, or had placed the draft and its proceeds beyond their control, so that the old draft might not be paid, were too remote.   The mistake of the drawees was rather as to the application of the money paid by them — a future fact. If the defendant had received this money and applied it upon the old draft the precise expectation of the drawees would have been met and there would have been no ground of complaint.   It is believed that no case can be found which holds that a party paying money, under the circumstances existing here, has been allowed to reclaim it upon the ground of mistake.   The defendant's case may rest upon principles decided in the cases of *Justh* v. *The National Bank of The Commonwealth* (56 N. Y. 478), and *Stephens* v. *The Board of Education* (79 id. 183).   In the *Justh Case* one Gray borrowed plaintiff's checks for $40,000 upon forged collaterals.   He took the checks and had them certified to be good by the drawee bank, and then deposited them with the defendant, which received the money upon them.   In that case the plaintiffs clearly parted with their checks under a mistake as to the genuineness of the collaterals.   If they had known that they were forgeries they would not have parted with the checks.  But upon the assumption that the defendant had parted with no value for the checks, or upon the faith of the checks, this court held that the plaintiffs could not recover the amount of the checks, treating them as money paid to the de-

fendant. The decision was also put upon the ground that the defendant had parted with value for the checks, and thus rests upon both grounds. In the *Stephens Case* one Gill obtained of the plaintiff a sum of money upon the security of a forged mortgage and paid the money to the defendant upon an antecedent debt; and it was held that the plaintiff could not reclaim the money. These decisions and others like them do not rest, as has been sometimes supposed, on the ground that money has no earmark, but upon grounds of public policy. As said by Judge ANDREWS in the *Stephens Case:* "It would introduce great confusion into commercial dealings, if the creditor who receives money in payment of a debt is subject to the risk of accounting therefor to a third person who may be able to show that the debtor obtained it from him by felony or fraud," and if the plaintiff in that case had shown that the very money he had loaned to Gill had been delivered to the defendant, the decision must have been the same. In the case of *Gammon* v. *Butler* (48 Me. 344) the plaintiff gave her husband $100 in bills, to be by him carried and delivered to her children, and he paid the same money to the defendant upon an antecedent debt, and it was held that, in an action for money had and received, she could not recover, and the decision was based upon the same principles laid down in the cases of *Justh* and *Stephens*. A large share of the business of the world ·is carried on by means of bills of exchange drawn upon persons liable to pay or for the accommodation of the drawers willing to pay them. They pass from hand to hand by indorsement or mere delivery, and are generally payable at places distant from the places where they are drawn. The "protection and encouragement of trade and commerce," as said in the *Maine Case*, and "considerations of public policy and convenience," and "the security and certainty in business transactions," as said in the *Stephens Case*, require that when such a bill is paid to one who holds it in good faith and for value, he should not be called upon afterward to account for the money paid, perhaps, at a distant time or place after the accounts with the drawers have been settled and closed, upon proof that in transactions between

the drawees and drawers, of which the holder has no knowledge or means of knowledge, there has been some fraud, or wrong, or mistake to the injury of the drawees. If this money can be reclaimed, public policy is just as much contravened as it would be if the money had been drawn from the drawees by the drawers and by them paid to the defendant. If the drawers had received this money from the drawees to pay the old draft and had used it to pay their antecedent debt to the defendant, it is conceded that the drawees could not have reclaimed it. How can it make any difference in principle that the money was paid to the defendant directly by the drawees upon the order of the drawers? Whether the money was paid in the one way or the other, the principles of public policy and convenience lead to the same conclusion.

It matters not that the defendant, not being a holder for value parted with when it took the draft, could not have enforced it against the drawees even after acceptance. That was true in the case of the check in the *Justh Case.* If the defendant in that case had parted with no value at the time it took the checks from Gray, it could not have sued the plaintiffs there as drawers. Yet after the plaintiffs, through the drawee bank, had paid the checks, it could not reclaim the money paid. Here the drawees could have refused to accept the draft, and they might have refused to pay after acceptance, and might probably have successfully defended an action upon the draft. But having paid the draft, they must now look to the drawers who made an improper use of the same, and who in law perpetrated a fraud upon them, and they cannot visit the consequences of that fraud upon the innocent defendant.

It is undoubtedly the rule in this State that one who signs commercial paper for the accommodation of another, for a particular purpose, can defend, when sued upon the paper by a person who took it as security for, or to apply upon an antecedent debt without parting with value at the time, by showing that the paper has been diverted from the purpose intended. This rule is an exception from the general rule of commercial law which protects one taking such paper in good

faith and for value against the equities or defenses of all prior parties to the paper. (1 Pars. on Notes and Bills, 218.) While this exception has been much assailed in other jurisdictions and is not recognized in England, or in the Federal courts, or in the courts of many of the States of the Union, it is believed that it more frequently than otherwise tends to just results. The holder of the paper in such cases is generally soon made aware of the defense, and can take measures to protect himself from harm. But it is carrying the exception one step further to hold that the accommodation signer of such paper can pay it, and then, at any time before the statute of limitations has barred his right, and after time has complicated or changed the relations of the parties, sue to recover back the money thus paid.

The facts seem to disclose another ground of defense to this action. The draft was of value to the defendant. It had the right in any event to hold it and enforce it against the drawers, and the drawees could not reclaim the money paid and at the same time retain the draft. They should, before the commencement of the action, have demanded the money, and tendered back the draft, and it is possible that a tender at the trial would be sufficient. As this point was not made on behalf of the defendant, we will notice it no further and give it no weight in our decision.

In this discussion we have assumed that the defendant took this draft without notice of the purpose for which the drawees authorized it to be drawn. We are justified in this assumption by the undisputed evidence. If the case had been submitted to the jury, and they had found that the defendant had such notice, the verdict would have been so far against the evidence that it would have been the duty of the court, upon application, to set it aside.

Our conclusion, therefore, is that this recovery cannot be upheld, and the judgment should be reversed and a new trial granted.

All concur, except MILLER, J., dissenting; FOLGER, Ch. J., and ANDREWS, J, concurring in result.

Judgment reversed.