(110 App. Div. 683.)

## HILL v. WEIDINGER.

(Supreme Court, Appellate Division, First Department. January 26, 1906.)

1. CORPORATIONS—ANNUAL REPORTS—FAILURE TO FILE—DIRECTORS—PERSONAL LIABILITY—ACTIONS—PLEADING AND PROOF.

Where, in an action against a director of a corporation to hold him personally liable for failure of the corporation or the director to file an annual report, as required by Laws 1892, p. 1832, c. 688, § 30, for the year 1897, plaintiff alleged a cause of action for breach of contract on the part of the corporation, he could not recover without amending his complaint or requesting to amend, over defendant's proper objection, on the theory that in June, 1897, his assignor rescinded the contract with the corporation, and demanded repayment of the consideration, which constituted the damages alleged, and hence, that at that time defendant became liable to pay, because in the January following neither the corporation nor defendant filed a report.

2. PLEADINGS—AMENDMENT—CONFORMATION TO PROOF..

Where plaintiff was permitted against defendant's objection to recover on a wholly different cause of action than that alleged, without amendment, the pleadings could not be reformed to conform to the proof, though defendant was probably not misled.

[Ed. Note.—For cases in point, see vol. 39, Cent. Dig. Pleading, §§ 603–619.]

Appeal from Trial Term, New York County.

Action by Frederick M. Hill against Carl G. Weidinger. From a judgment in favor of plaintiff, and from an order denying defendant's motion for a new trial, he appeals. Reversed.

Argued before O'BRIEN, P. J., and McLAUGHLIN, INGRAHAM, LAUGHLIN, and HOUGHTON, JJ.

Edmund Luis Mooney, for appellant.
Walter Carroll Low, for respondent.

HOUGHTON, J. Plaintiff brings this action against the defendant to charge him with an alleged debt of the Universal Lasting Machine Company, a domestic stock corporation, on the ground that the corporation did not in the year 1897, or in the month of January, 1898, file the annual report as to its financial condition, required by section 30 of chapter 688, p. 1832, of the Laws of 1892, and that he himself, as director of such corporation, did not, during the year 1897 or within 30 days from the 1st day of February, 1898, file the statement permitted by such section, exonerating himself from liability because of such failure.

Plaintiff's assignor, one Harvey M. Munsell, in the year 1889, en-

tered into a contract with the Universal Lasting Machine Company, for the purchase and right to use certain Canadian patents, to be thereafter obtained for improved method of tacking boots and shoes lasted upon a machine, the patents for which were said to be owned by the corporation, and for the purchase of a machine to be manufactured in conformity with such patents. $500 in cash was paid upon the execution of the agreement, and in 1891, the corporation being in need of money and soliciting Munsell therefor, $3,500 in addition was paid, being the full purchase price provided by the contract, except the amount to be paid for the machine when completed. The patent claimed to be owned by the corporation was known as the "John Patten Lasting Machine" patent, and the new patent was described by the contract as the "John Patten Tacking Machine" patent. The new patent was granted to John Patten by the Canadian government in 1889, shortly after the contract was entered into between the corporation and Munsell, but it is not shown that it was assigned by him to Munsell or the corporation. Munsell was to pay for the procuring of this patent, but he does not appear to have ever been called upon so to do. No time was provided within which the machine contracted for was to be manufactured, and it would seem that its practical construction was a matter of experiment, and that, at least, down to June, 1897, money was being expended and efforts made to make it a commercial success.

During the years from 1889 to the spring of 1896 very many interviews were had between Munsell and Englehorn, the president of the corporation, in which the president expressed great hope for the ultimate success of the experiments and the machine, and from which it would appear that Munsell was reasonably resigned to the long delay; and, indeed, counsel for the respondent admits, by his points, that the time of performance of the contract was extended by Munsell, at least, to April, 1896. At this time a new president of the corporation was elected, and the defendant was made one of the directors, and continued to act as such until March 28, 1898, when the corporation made a general assignment for the benefit of its creditors. The retiring president assured Munsell that the incoming president would look after his interests as carefully as he himself had done, and that he need have no fear that he would not be taken care of as well as the circumstances would permit. In the late winter or spring of 1897, Munsell had an interview with the then president with respect to the patents and the manufacture of the machine and the progress of the experiments, and the president told him that he hoped within three or four months to be able to get the patents, and have the machine completed. At the end of that period, which is fixed as June, 1897, Munsell testifies that he demanded the patent and the machine or his money.

The patents were not assigned, the machine was neither completed nor delivered, nor was the money paid. In September, 1899, Munsell assigned to the plaintiff all his rights under the contract, and claims against any persons thereunder. Thereafter the plaintiff notified the defendant that he proposed to hold him liable because of his directorship, and the failure of the company to file an annual report in the years 1897 and 1898, particularly for the consideration paid, because

there had been a "breach" of the contract by the corporation. Thereupon plaintiff brought this action, and in his complaint, in addition to setting forth the incorporation of the company, directorship of the defendant, failure to file the reports, entering into the contract, payment of the $4,000 assignment to himself, demand upon defendant to pay, alleged specifically that Munsell was at all times ready and willing to perform, and offered to, and did perform, his part of such contract; but that the corporation by the making of a general assignment for the benefit of its creditors, incapacitated itself to perform, and did not perform, but "wholly failed and neglected to do so, whereby Munsell was damaged in the sum of $4,000, for which the corporation became indebted to him," and judgment was demanded for such sum, with interest from the 28th of March, 1898, the date of the general assignment for the benefit of creditors.

Both parties concede, as they manifestly must, that in order to charge a director with a debt of the corporation, three elements must exist: Directorship, failure to make and file the report, and a debt against the corporation existing at some period of the directorship and at the time of the failure. Rector, etc., of Trinity Church v. Vanderbilt, 96 N. Y. 170, 173. It is also conceded by the respondent, that the "debt" must be one existing in fact, and that a director cannot be held liable for unliquidated damages arising out of a breach of contract made with the corporation, and such we understand to be the law. Victory Webb Printing Co. v. Beecher, 26 Hun, 48, affirmed 97 N. Y. 651; Whitney Arms Co. v. Barlow, 68 N. Y. 34; Gold v. Clyne, 134 N. Y. 262, 31 N. E. 980, 17 L. R. A. 767; Oviatt v. Hughes, 41 Barb. 541.

Without any amendment of his complaint, or request to amend, and against the earnest and repeated protest of the defendant by seasonable and proper motion, the plaintiff was permitted to recover upon the theory that in June, 1897, Munsell rescinded his contract with the corporation and demanded repayment of the $4,000 which he had paid thereon; and that, hence, at that time a debt in assumpsit arose against the corporation, which the defendant became liable to pay because in the January following, the corporation filed no annual report, and because he himself filed no report which would exonerate him from such failure. It seems very plain that the complaint is framed, not upon rescission of the contract, but upon its breach. The plain allegation is that Munsell was at all times ready and willing to perform, but that the corporation, by making the general assignment for the benefit of its creditors, incapacitated itself from performance, and thereby broke its contract. That the damages asked are confined to the consideration paid does not remedy the difficulty. The consideration paid may have represented the largest and the only damages flowing from a breach, for the contract may have been of no value.

The plaintiff alleged a cause of action arising out of a breach of his assignor's contract with the corporation, for which the defendant as director was not liable. He was permitted to prove and recover upon a wholly different cause of action, without amendment asked or allowed and against seasonable objection by the defendant. Under such circumstances the pleadings cannot be conformed to the proof, even

though defendant was probably not misled. Southwick v. First National Bank of Memphis, 84 N. Y. 426; Reed v. McConnell, 133 N. Y. 426, 31 N. E. 22; Davis v. Broadalbin Knitting Company, 90 App. Div. 567, 86 N. Y. Supp. 127. If plaintiff's complaint be interpreted as one in rescission, because the corporation had made itself incapable of performing the contract by its general assignment for the benefit of its creditors, still the plaintiff could not recover from the defendant on that ground, because that act was not performed until the 28th of March, 1898; and if there was any occasion for the corporation filing a report thereafter, there is no proof that this was not done, or that the defendant continued to be a director. Even on the plaintiff's own theory there is doubt whether the testimony discloses an actual rescission in June, 1897; but our conclusion that the judgment must be reversed because the recovery was had upon a cause of action not alleged in the complaint and inconsistent with it, to which defendant made proper objection, renders it unnecessary for us to consider this question, or the many others urged in appellant's brief.

The judgment and order should be reversed, and a new trial granted, with costs to the appellant to abide the event. All concur.