RUDOLF E. F. FLINSCH, Respondent, Appellant, *v.* VIELE, BLACKWELL & BUCK, Appellant, Respondent.

First Department, December 24, 1920.

Principal and agent — contracts employing agent construed — original contract of employment superseded by second contract — complaint stating cause of action upon contract which has been superseded.

In an action to recover commissions for services rendered to the defendant it appeared that at a time when the defendant was engaged solely in a general engineering business and not in any commercial enterprise, it made an agreement with the plaintiff to pay him twenty-five per cent of the net profits of the defendant arising through such negotiations of the plaintiff as should bring to the defendant " engineering, construction, reporting, appraisal or other work." As the engineering work of the defendant was not profitable during the late war, it embarked in a new business of exporting and importing merchandise, and the plaintiff introduced to the defendant two persons who acted as the defendant's agents

in foreign trade which became remunerative. Thereafter in confirmation of an oral agreement with the plaintiff the defendant agreed in writing to pay the plaintiff a yearly retainer of $2,500 in addition to ten per cent of the net profits accruing to the defendant from the business done by one of the commercial agents furnished by the plaintiff, " or other business which you may yourself originate in our behalf," no express reference being made to business done by the other agent. The defendant tendered a check for $2,500 in payment of the plaintiff's retainer, which check was accepted by him without objection. In his original complaint the plaintiff set out the initial contract and also the subsequent agreement, but by an amended complaint he omitted the second agreement and alleged only the initial agreement as the basis of his claim against the defendant.

*Held,* on all the evidence, that the original contract of employment was superseded by the subsequent agreement; that under the original contract the plaintiff could not recover commissions on any of the commercial work done by the agents whom he introduced to the defendant.

*Held further,* that as the amended complaint superseded the original complaint for all purposes a judgment based upon the original contract not set forth in the amended complaint was unwarranted and that the plaintiff is not entitled to recover except a balance admitted by the defendant to be due under the terms of the second contract.

APPEAL by the defendant, Viele, Blackwell & Buck, from a judgment of the Supreme Court in favor of the plaintiff, entered in the office of the clerk of the county of New York on the 24th day of July, 1919, upon the report of a referee appointed to hear and determine all the issues, and also from an order entered in said clerk's office on the 23d day of July, 1919, granting plaintiff's motion for an extra allowance.

Appeal by the plaintiff, Rudolf E. F. Flinsch, from said judgment in so far as it fails to compute the damages awarded to the plaintiff upon the basis demanded by him.

*Howard Taylor* of counsel [*Taylor, Jackson, Brophy & Nash,* attorneys], for the plaintiff.

*Nathan L. Miller* of counsel [*E. Crosby Kindleberger* and *Hamilton Rogers* with him on the brief], *Curtis, Mallet-Prevost & Colt,* attorneys, for the defendant.

MERRELL, J.:

This action is brought by the plaintiff to recover of the defendant, a domestic corporation, commissions in the sum of $175,000, claimed by plaintiff to be his due from the defendant upon a contract entered into November 25, 1913,

between the plaintiff and the defendant, whereby plaintiff was to devote his time as far as possible to negotiations intended to result in procuring for the defendant new work in its business.

The defendant, for several years prior to the date of the making of said contract, was engaged in the general engineering business, principally in carrying on engineering projects in construction work. At the time of the making of said contract, defendant had never engaged in any commercial enterprise further than disposing of securities received by it in connection with its work. The original contract was in writing and provided that the plaintiff should be furnished by the defendant with suitable desk room in their place of business at 49 Wall street, in the city of New York, together with telephone facilities for himself and his secretary-stenographer, which he was to furnish. Under the terms of said written contract entered into between the parties the plaintiff was to devote his time as far as possible " to such negotiations as may result in bringing to Viele, Blackwell & Buck [the defendant] engineering, construction, reporting, appraisal or other work." Plaintiff was to pay all his traveling expenses during preliminary negotiations for work, but defendant was to reimburse plaintiff for all traveling and living expenses incurred in connection with the work after it was assigned by contract to said defendant. As compensation for his services the contract provided that plaintiff should receive twenty-five per cent of the net profits to the defendant of such work as he brought to said defendant, provided only that the net profits exceeded ten per cent over and above the net cost. If, after deducting the twenty-five per cent commission paid plaintiff, the remaining profit exceeded twenty-five per cent of costs, plaintiff was to receive in addition one-fourth of the amount by which said remaining net profit exceeded such percentage of cost. Such arrangement, by the terms of the written contract, was to continue for an indefinite period, either party being free to withdraw on reasonable notice at any time, provided the arrangement did not prove practicable, but such withdrawal was not to relieve either party of responsibility for agreements incurred prior to the date of withdrawal.

During the succeeding years after the making of this

contract plaintiff was unsuccessful in bringing to the defendant much, if any, business of the nature specified in the contract. The engineering business of the defendant, by reason of the breaking out of the war in 1914, languished, and the defendant then conceived the idea of embarking in an entirely new line of business, namely, that of exporting and importing merchandise, and it appears that plaintiff, to some extent, participated in defendant's efforts to build up a new line of business. In July, 1916, the plaintiff introduced to the defendant one Pablo Floussfisch, with whom the plaintiff had theretofore had some dealing, and from which connection plaintiff had apparently derived some income. The defendant thereafter made an arrangement with Floussfisch whereby the latter was to attend to the purchasing, shipment and sale of certain exports and imports in South America, and particularly in Argentina, and the defendant was to finance the same. Under this arrangement Floussfisch and the defendant shared equally in the profits from such export and import trade. The evidence discloses that in 1916 the defendant was desirous of extending its commercial export and import business to the Orient, and made some effort to secure the services of a representative to aid it in establishing an oriental business. In the autumn of 1916 the plaintiff introduced to the defendant a young man by the name of De Sherbinin, and represented to the defendant that he would be a good man to act as their representative in the Far East. Negotiations were had between the defendant and De Sherbinin resulting in an agreement entered into between defendant and De Sherbinin whereby the latter was employed to go to the Orient as the representative of the defendant and for the purpose of establishing a commercial business there for said defendant. By that agreement De Sherbinin was to receive one-third of the net profits arising upon such business as he might procure, the balance to be retained by the defendant. Soon thereafter De Sherbinin departed for the Far East, and was soon successful in establishing a trade there in behalf of the defendant. Almost from the start De Sherbinin succeeded in placing large orders. These orders commenced to come in to the defendant in February, 1917, and during that month amounted to over $100,000. The March orders amounted to $95,000, and the April orders amounted to $550,000. The

latter part of May, 1917, De Sherbinin left Yokohama for America.

The evidence shows that in the early part of 1917 considerable discussion was had between representatives of the defendant and the plaintiff, notably the vice-president of the defendant, H. W. Buck, with reference to a stated salary or compensation which the plaintiff was to receive. According to the testimony the various talks had between the parties culminated on April tenth in an oral agreement with reference to compensation which the plaintiff was to receive from the defendant for the year ending March 31, 1917, and also with reference to the compensation which he was to receive for the year commencing April 1, 1917. On the same day defendant's vice-president, Buck, representing the defendant, after talking with the plaintiff, dictated a memorandum and laid the same upon the plaintiff's desk in the business place of the defendant in the following form:

"R. E. F. FLINSCH, Esq.,　　　　　　　　"*April* 10*th*, 1917.
　　　　" Office:

" The following is in confirmation of our talk this morning.

" For the year ending March 31st, 1917, we will pay you a retainer of $2,500 and in addition, an amount equal to 10% of the net profits accruing to us from the Floussfisch business, which has been liquidated up to that date. In figuring the net profits of the Floussfisch business, it is understood that proper office expenses will be charged in, and also reasonable allowance for overhead expense.

" From April 1st, 1917, we will also pay you a retainer at the rate of $2,500 per year, in consideration of your assisting us in the export business, and also a sum equal to 10% of the net profits as above, from the Floussfisch business, or other business which you yourself originate in our behalf, to an equal extent. These profits are to be reckoned semi-annually, on business actually liquidated during the period.

" In case the time and effort required to be devoted by you to our business reasonably justifies it, the retainer may be increased by mutual agreement and adjustment.

" This arrangement takes the place of our memo of November 25th, 1913.　　　　　　　　H. W. BUCK.
" HWB /d "

At the same time the defendant placed upon the desk of the plaintiff a check for the $2,500 mentioned in the aforesaid memorandum as a retainer for the year ending March 31, 1917, together with a formal receipt therefor, reading as follows:

" *April* 10, 1917.

" VIELE, BLACKWELL & BUCK

   " To RUDOLPH E. F. FLINSCH, Dr.

" For salary for year ended March 31, 1917, $2,500.00

" Approved: W. M. B., Treasurer.

" Received from VIELE, BLACKWELL & BUCK

   " Two Thousand, Five Hundred Dollars, in full settlement of the above account.

   " Dated.   April 10, 1917."

The plaintiff saw this memorandum of agreement, did not object thereto, and signed said receipt which had been prepared by the defendant for the $2,500. Buck testified that the aforesaid memorandum was in all respects in conformity with the oral talk which he had had with the plaintiff, with the exception of the final clause; that the arrangement took the place of their memorandum of November 25, 1913, which he says was not talked between them. However, the plaintiff did not object to the inclusion of the last-mentioned statement in the memorandum and never disputed or denied the correctness of the same. Thereafter the plaintiff continued in the office of the defendant until July 1, 1918, assisting the defendant in its export business.

In the original complaint herein, wherein the plaintiff demanded judgment for the sum of $175,000, the plaintiff sets forth both the contract of November 25, 1913, and the subsequent memorandum of agreement of April 10, 1917. Upon motion of the defendant the court ordered the plaintiff to serve an amended complaint concisely stating his cause of action. Thereupon the plaintiff did serve an amended complaint wherein he alleged as the basis of his claim only the original written contract between the parties dated November 25, 1913, and alleged that he was entitled to commissions at the rate of twenty-five per cent upon the net profits received by the defendant, not only from the Floussfisch

or South American business, but also upon the business in the Orient secured through De Sherbinin. The defendant, however, answered the amended complaint, setting forth, among other things, the contract of April 10, 1917. The issues were sent to a referee and the referee has decided that the plaintiff cannot recover upon the cause of action set forth in his amended complaint, and cannot recover upon the contract of November 25, 1913, for the reason that the commercial business which the defendant has conducted, and growing out of which said commissions are demanded, was not contemplated by the contract. That contract provided that the plaintiff was to devote his time as far as possible " to such negotiations as may result in bringing to Viele, Blackwell & Buck engineering, construction, reporting, appraisal or *other work.*" The plaintiff contends that the commercial business of exporting and importing comes fairly within the provision of the contract as " other work." The referee, however, found that, under the rule of *ejusdem generis,* the words " other work " refer to the engineering, construction, reporting and appraisal work, which was generally the work that the defendant, as an engineering corporation, had theretofore carried on. Therefore the referee held that under the original contract the plaintiff could not recover commissions either on the Floussfisch or the De Sherbinin business.

The referee also held that under the terms of the contract of April 10, 1917, the previous contract of November 25, 1913, was superseded.

I think the learned referee correctly decided both of said propositions. I am entirely clear that at the time of the making of the original contract on November 25, 1913, the defendant did not contemplate engaging in any commercial business, and that plaintiff's employment was entirely along the lines of engineering work, and that the term " other work " in the original contract related solely to other work of the same general nature as that specified in the contract and in which the defendant had theretofore been engaged. Also, I think the plaintiff is bound by the statement contained in the memorandum of agreement placed upon his desk by the defendant's vice-president on April 10, 1917, purporting to express the new arrangement made between them, which

arrangement it was stated took the place of the former agreement of November 25, 1913. If I am right in this respect, then the plaintiff is not entitled to recover under the first contract any sum whatsoever.

The referee, however, held that, under the clause contained in the memorandum of agreement of April 10, 1917, to the effect that " from April 1, 1917, we will also pay you a retainer at the rate of $2,500 per year, in consideration of your assisting us in the export business, and also a sum equal to 10% of the net profits as above, from the Floussfisch business, *or other business which you yourself originate in our behalf* * * * " the plaintiff is entitled to recover his commissions at the rate of ten per cent upon the business in the Orient procured through De Sherbinin, who had been introduced by the plaintiff to said defendant. In other words, the learned referee has held that the term " other business which you yourself originate in our behalf," embraces any business, past, present or future, which was originated by the plaintiff.

From a careful examination of this provision of the memorandum agreement of April 10, 1917, I am constrained to disagree with the conclusion of the referee. I think the provision taken as a whole refers to new business or future business which the plaintiff may originate in behalf of the defendant. I do not think the parties at that time had in contemplation the De Sherbinin or oriental business, although at the time this contract was entered into said business in the Far East was in a most flourishing condition and bid fair to bring to the defendant enormous profits. In the provisions of the contract of April 10, 1917, the Floussfisch business was particularly mentioned, and no good reason appears for not mentioning the De Sherbinin business, if the parties at that time considered that such business was affected by or embraced in the contract. Furthermore, the provision as to the payment of ten per cent of the net profits on other business originated by the plaintiff in defendant's behalf also was followed by the following significant words, to which the referee attached no importance, namely, " to an equal extent." I think the evidence fairly shows that in originating the Floussfisch business the plaintiff was far more instrumental than in originating the De Sherbinin business, which origination

consisted solely in introducing De Sherbinin to the defendant. Floussfisch was an experienced importer, while De Sherbinin had no experience in the service to which he was assigned. I think, moreover, it was very questionable whether from a bare introduction of a salesman to the defendant, subsequent business obtained by said salesman under a contract with the defendant can be said to have been "originated" by the plaintiff. Certainly it was not originated "to an equal extent" as was the Floussfisch business. It is a matter of considerable significance that until July, 1918, the plaintiff made no claim to commissions on the De Sherbinin business, although entirely familiar with the course of that business, which was constantly being liquidated, and from which De Sherbinin himself had received as his share of the profits sums aggregating at least $100,000. The parties gave to the contract of November 25, 1913, a practical construction that neither the Floussfisch nor the De Sherbinin business was embraced therein by making the contract of April 10, 1917, which provided compensation for just that sort of service.

To my mind the memorandum contract of April 10, 1917, was clear and without ambiguity, and under its plain terms the plaintiff was not entitled to recover any commissions, save that his due upon the Floussfisch business. Under the terms of the agreement of April 10, 1917, plaintiff was to receive as compensation for his services for the defendant the sum of $2,500 a year, and in addition was to receive a commission of ten per cent upon the Floussfisch business, or upon any other business which he might originate in defendant's behalf to an equal extent.

I am also of the opinion that the judgment entered herein was based upon an alleged breach of a contract not set forth in the complaint, and that for that reason the plaintiff is not entitled to recover. The referee distinctly found that the agreement of November 25, 1913, did not apply to any of the services for which the plaintiff seeks to recover in this action. No application was made by the plaintiff at any time during the progress of the trial to amend the complaint, and indeed, the plaintiff is here appealing from the judgment rendered, still claiming a right to recover under the contract of November 25, 1913, and is insisting that the referee has

erred in holding that he is entitled to recover under the contract of April 10, 1917. The law is too well settled to require the citation of authorities that the plaintiff cannot recover upon a cause of action not set forth in his complaint. This is an action at law, and that rule is peculiarly applicable to such actions. The amended complaint served herein superseded the original complaint for all purposes. (*Branower & Son, Inc., v. Waldes,* 173 App. Div. 676; *Lewis v. Pollack,* 85 id. 577; *Brooks Brothers v. Tiffany,* 117 id. 470.) In the latter case, in the opinion of HOUGHTON, J., it was said: "Where an amended pleading is served it takes the place of the original pleading, and the action will proceed as if the original pleading had never been served, for the issues thus tendered are the ones upon which the action must proceed."

The recovery here is directly contrary to the provisions of section 1207 of the Code of Civil Procedure, which expressly provides that after answer the court may permit the plaintiff to take any judgment "consistent with the case made by the complaint, and embraced within the issue." As was said by Judge COLLIN in *Walrath v. Hanover Fire Ins. Co.* (216 N. Y. 220): "It is fundamental that in civil actions the plaintiff must recover upon the facts stated in his complaint, or not at all. In case a complaint proceeds on a definite, clear and certain theory, it will not support or permit of another theory because it contains isolated or subsidiary statements consistent therewith. A party must recover not only according to his proofs but according to his' pleadings. (*Northam v. Dutchess Co. Mut. Ins. Co.,* 177 N. Y. 73; *Canton Brick Co. v. Howlett,* 169 N. Y. 293; *Brightson v. Claflin Co.,* 180 N. Y. 76; *Southwick v. First Nat. Bank of Memphis,* 84 N. Y. 420.)" See, also, *Allerton v. Rhineland Machine Works Co.* (165 App. Div. 557), in which Mr. Justice HOTCHKISS said: "The cases are numerous where it has been held that if the plaintiff fails to prove the cause of action set up in his complaint, and the objection is properly taken and preserved by exception, and no amendment of the pleadings is had, a judgment in plaintiff's favor on a cause of action entirely separate and distinct from that alleged cannot be sustained on appeal."

In *Southwick v. First Nat. Bank of Memphis* (84 N. Y. 420) the court said: "It is no answer to this objection that the

·defendant was probably not misled in its defense. A defendant may learn outside of the complaint what he is sued for and thus may be ready to meet plaintiff's claim upon the trial. He may even know precisely what he is sued for when the summons alone is served upon him. Yet it is his right to have a complaint, to learn from that what he is sued for and to insist that that shall state the cause of action which he is called upon to answer, and when a plaintiff fails to establish the cause of action alleged the defendant is not to be deprived of his objection to a recovery by any assumption or upon any speculation that he has not been injured."

It is conceded by the defendant that the plaintiff is entitled to recover the balance his due as commissions upon the Floussfisch business. The balance appears to amount to $2,245.60. The plaintiff's recovery should be restricted to the latter amount. The plaintiff should also recover of the defendant the taxable costs of the action. And with the exception thereof, the complaint should be dismissed, and the judgment, so far as it denies the plaintiff's claim for commissions under the contract of November 25, 1913, should be affirmed. New findings should be made in conformity herewith. The defendant should recover the costs of this appeal.

CLARKE, P. J., LAUGHLIN, DOWLING and GREENBAUM, JJ., concur.

Judgment modified as directed in opinion and as modified affirmed, with costs to defendant. Settle order on notice.