POLLY GAMMON *versus* BENJAMIN P. BUTLER.

Although a contract, not in writing, for the sale of land, is within the statute for the prevention of frauds, and cannot be legally enforced, it, nevertheless, is morally binding, and for the purposes of justice and equity, may, in some cases, be upheld.

*Thus*, the party advancing money under such a contract cannot recover it back, if the other party has the power and has been ready, on his part, to perform the contract.

Where one had received, from his wife, money of her own, for a specific purpose, and without her knowledge pays it to a person with whom he had orally contracted to purchase a farm, in part payment therefor, and fails to pay the balance, the wife cannot recover back the money from the person to whom it was paid by her husband.

For the protection and encouragement of trade and commerce, a different rule has been established, in relation to money belonging to one person and wrongfully or even feloniously taken from him and paid to another, without his knowledge or consent, than that, which applies to other kinds of personal estate.

REPORTED from *Nisi Prius* by TENNEY, C. J.

THIS was an action for money had and received, in which the plaintiff claimed to recover of the defendant the sum of one hundred dollars. To sustain the action, her counsel called her as a witness; and her testimony tended to prove, that she delivered to her husband one hundred dollars in bank bills, to be carried by him to New Sharon and given to her children, residing there; that the money was hers, a part of the proceeds of the sale of some real estate she owned in her own right; that she never gave any authority or consent that her husband should pay it to, or deposit it with the defendant; and, when she was informed the defendant had received it, she demanded it of him.

From other testimony in the case, it appeared that the plaintiff's husband, sometime before he received the money, had made a contract, not in writing, with the defendant to purchase a farm of him, and to pay $200, and give his notes for the balance of the purchase money to be secured by a mortgage of the farm. He paid to defendant the $100, he

had received from his wife to take to her children, but *Gammon* did not inform him that the money was his wife's; and promised that he would soon pay the remaining $100 and give the notes and mortgage to complete his contract to purchase the farm; but *Gammon* failed to do so.

The defendant has ever since been ready to perform his part of the contract.

*Record & Luce*, for plaintiff.

*N. Morrill*, for defendant.

The opinion of the Court was drawn up by

MAY, J.——The verbal contract, made by the plaintiff's husband with the defendant for the purchase of the Prairie farm, so called, seems to have been a fair one. No fraud or misrepresentation is pretended. The defendant received the money, now sought to be recovered, in pursuance of the contract, and in part payment for the farm which he was to convey to the husband upon, and only upon, the performance of certain conditions. The evidence shows that he has always been in a condition to perform his part of the contract, and ready and anxious to do so. As between him and the other party to the contract, he appears to be without fault.

In view of these facts, the contract, though within the statute of frauds, is not utterly void; and, nothwithstanding it cannot be enforced at law, is morally binding, and for the purposes of justice and equity, may, in certain cases, be upheld. Thus, the party advancing money, under such a contract, cannot recover it back so long as the other contracting party is able and willing to perform on his part. To this extent, it is well settled that an oral contract for the purchase of lands, or an interest in lands, will be upheld. *Richards* v. *Allen*, 17 Maine, 296, and *Coughlin* v. *Knowles*, 7 Met., 52, are cases directly in point.

If we assume that the identical money paid to the defendant belonged to the plaintiff, and that it was paid by her husband without her knowledge or consent, in violation of the

specific purpose for which he received it, will the plaintiff stand upon any better ground than her husband would, if the money belonged to him? The facts show that the defendant took the money in the usual course of business, and upon a consideration sufficient in the eye of the law to entitle him to retain it as against the husband, and without notice or reason to suspect that the money or any portion of it belonged to the plaintiff. Under such circumstances, we do not think the plaintiff can recover. Had the property her husband put away been any thing else but money, she might have reclaimed it, or in some appropriate action have recovered its value.

But, for the protection and encouragement of trade and commerce, a different rule has been established in relation to money belonging to one person, and wrongfully or even feloniously taken from him, and paid to another without his knowledge or consent, than that which applies to other kinds of personal estate. In such a case, notwithstanding the party paying it away had no authority or right to use it, still, if the party who receives it took it in the usual course of trade or business, and for a valuable consideration, in ignorance of the circumstances by which the payor came by it, he will be entitled to hold it as against the former owner from whom it was tortiously taken or stolen. Such is the law, and no case has been cited to the contrary. *Miller* v. *Race*, 1 Burr., 452, and several cases there cited are directly in point.

So, too, the same doctrine is recognized with approbation in the case of *Mason* v. *Waite*, 17 Mass., 560, by PARKER, C. J., who, in closing the opinion in that case, says — "had Sargeant," the stage-driver, who received the money from the plaintiff to carry to Boston for a specific use, "paid the money to an innocent person for a valuable consideration, or to satisfy a debt of his own, the case might have been different; as it would be mischievous to require of persons, who receive money in the way of business or payment of debts, to look into the authority of him from whom they receive it." In this case, the plaintiff recovered because his money went into

the hands of the defendant as the winner of it at a faro table.

That bank notes or bank bills are generally treated as money, the same authorities which have been cited, fully show. In *Miller* v. *Race*, where the same ground was taken which has been urged upon us in behalf of the plaintiff, Lord MANSFIELD says—"the whole fallacy of the argument turns upon comparing bank notes to what they do not resemble, and what they ought not to be compared to, viz.,—to goods, or to securities, or documents for debts. Now they are not goods, not securities, nor documents for debts, nor are they so esteemed, but are treated as money, as cash, in the ordinary course and transaction of business, by the general consent of mankind, which gives them the credit and currency of money to all intents and purposes." In our judgment, any rule of law tending to destroy that currency would be highly detrimental to the interests of trade and business, and, therefore, against public policy. That bank bills, in this and other States, are regarded as money for all purposes but that of a legal tender, and for that also when not objected to, appears from the whole current of authority. Parsons, in his valuable treatise on Commercial Law, chapter 9, § 4, p. 90, when speaking upon the subject of bank notes, says—"they are intended to be used as money, and, while a finder or one who steals them has no title himself against the owner, still, if he passes them away to a *bona fide* holder, that is, a holder for value without notice or knowledge, such owner holds them against the original owner." In view of the fact that the defendant in this case is such a holder, and of the preceding authorities, which are based upon a wise public policy, this action cannot be maintained. *Plaintiff nonsuit.*

TENNEY, C. J., APPLETON, CUTTING, GOODENOW and DAVIS, JJ., concurred.