MERCHANTS' INSURANCE COMPANY OF PROVIDENCE *vs.*
CHARLES W. ABBOTT & others.
HANOVER FIRE INSURANCE COMPANY *vs.* CHARLES W.
ABBOTT & others.
HARTFORD FIRE INSURANCE COMPANY *vs.* SAME.
NATIONAL FIRE INSURANCE COMPANY *vs.* SAME.
LAMAR INSURANCE COMPANY *vs.* SAME.

Middlesex. Feb. 27, 1879; March 8. — Sept. 13, 1881. DEVENS & ALLEN,
JJ., absent.

If, after a loss by fire has happened through fraud of the assured, and been adjusted by the insurers, he assigns his claim under the policy to a creditor of his to secure a debt, and the insurers, at the request of the assured, pay to the creditor the amount so adjusted, both the insurers and the creditor being ignorant of the fraud, the insurers may recover from the assured the sum so paid, notwithstanding his subsequent discharge in bankruptcy. But they cannot recover it back from the creditor, if it does not exceed the amount of the debt so secured, whether contracted before or at the time of the assignment. Nor, even if it does exceed that amount, can they maintain an action against the assured and the creditor jointly. And it makes no difference, that the form of the assignment is of the assured's interest in the policy, that the assured as well as the creditor gives the insurers a receipt for the money, and that it is paid by the insurers to the creditor by check payable to him and the assured.

If a transitory action is brought by a foreign corporation against several defendants, in a county where only one of the defendants resides, and the action is fully tried on its merits, without objection being taken to the venue, the plaintiff, if he subsequently discontinues against such defendant, is entitled, on a new trial being granted, to prosecute the action against the other defendants in the same county.

The court, on ordering a new trial, may direct that issues which were fully tried or conceded at the previous trial shall not be tried again.

GRAY, C. J. These actions are in the nature of assumpsit for money had and received, with special counts alleging that the plaintiffs were induced to pay the money by fraud and mistake. The five cases were tried together, but are not exactly alike.

In the first action, which is brought by the Merchants' Insurance Company of Providence, R. I., against Charles W. Abbott and the members of the firm of Denny, Rice & Company, the material facts are shown by the report of the presiding justice and the special findings of the jury to be as follows:

On March 17, 1876, a woollen mill was destroyed by fire, upon the contents of which Abbott held a policy of insurance from

the plaintiffs in the sum of $2500, payable in sixty days after satisfactory proofs and adjustment of loss, and providing that any fraud or false swearing in the proofs of loss should avoid the policy. Soon after the fire, Abbott made and delivered to the plaintiffs proofs of loss, and they, after a reasonable investigation, which disclosed no grounds for a refusal to pay, and in ignorance of any fraud on Abbott's part, adjusted the amount of the loss in accordance with such proofs.

Denny, Rice & Company offered evidence of the following facts: At the time of the fire Abbott was indebted to them in the sum of about $4000. In the latter part of April 1876, Abbott paid them about $1500 in cash, and, as security for the payment of the rest of his debt, executed an instrument in writing under seal, by which, after reciting the issuing of the policy, and that a claim for loss had arisen under it, he assigned to them all his "claims upon said insurance company for loss under said policy," and authorized them to demand and sue for the same in his name, if necessary, and the proceeds to enjoy to their own use, and generally to do all and every act in and about the premises which he might do if this assignment had not been made.

In June 1876, at the expiration of the sixty days allowed by the terms of the policy, the plaintiffs, in good faith, and not knowing of any fraud on Abbott's part, paid to Denny, Rice & Company the amount of the loss as adjusted, and took a receipt signed by them in this form: " Boston, May 25, 1876. Received of the Merchants' Insurance Company of Providence $2478.80 in full satisfaction and discharge of all claim for loss and damage under this policy by fire March 17, 1876, and this policy is hereby cancelled and surrendered." The sum so paid exactly extinguished the debt of Abbott to Denny, Rice & Company, and they never paid any part of it to him.

The mill and its contents, as the jury found, were burned with the knowledge and at the instigation of Abbott, and his proofs of loss were false and fraudulent. The plaintiffs did not learn that they had been defrauded until May 1877, and then at once placed the case in the hands of legal counsel for investigation, and for prosecution if investigation should warrant it; and on January 16, 1878, brought this action. The other defendants

had no knowledge of any fraud, nor was any demand for the money made upon them before this action was commenced.

On June 5, 1877, Abbott filed a petition in bankruptcy, and on October 3, 1877, obtained a certificate of discharge, and no dividend was paid out of his estate.

The justice presiding at the trial ruled that Abbott's certificate of discharge was no bar to this action; and, holding that the facts offered to be proved by the other defendants constituted no defence, directed a general verdict for the plaintiffs, and reported the case for such disposition and judgment as the full court should determine.

There can be no doubt of the liability of Abbott in this action. If the money had been paid by the plaintiffs to him, it could be recovered back as money paid under the influence of a mistake between them and him as to the existence of a state of facts that would entitle him to the money.\* *Kelly* v. *Solari*, 9 M. & W. 54. *Townsend* v. *Crowdy*, 8 C. B. (N. S.) 477. *Pearson* v. *Lord*, 6 Mass. 81. *Stuart* v. *Sears*, 119 Mass. 143. *Welch* v. *Goodwin*, 123 Mass. 71. 2 Phil. Ins. §§ 1816, 1817. Although Abbott has not in fact received the money, the payment of the money by the plaintiffs at his request in discharge of his debt to the other defendants is equivalent to the receipt by Abbott of so much money, and is sufficient to enable the plaintiffs to maintain the action against him upon the special count, if not upon the general count for money had and received. *Emerson* v. *Baylies*, 19 Pick. 55. *Perry* v. *Swasey*, 12 Cush. 36. This liability of Abbott to the plaintiffs, being a debt created by his own fraud, is not barred by his certificate of discharge in bankruptcy. U. S. Rev. Sts. § 5117. *Turner* v. *Atwood*, 124 Mass. 411. *Mudge* v. *Wilmot*, 124 Mass. 493, and 103 U. S. 217.

As to the other defendants a different question is presented. If, before receiving the money from the plaintiffs, they had

---

\* Accordingly, in two other actions, brought by the MANUFACTURERS' FIRE AND MARINE INSURANCE COMPANY and the AMERICAN INSURANCE COMPANY respectively against ABBOTT only, to recover back money paid to him by the plaintiffs under the same circumstances as between them, which were tried, argued and determined with the cases in the text,

*The plaintiffs had judgment.*

known the true state of facts, and had participated in Abbott's fraud, they would have been liable to refund the money. *Martin* v. *Morgan*, 3 Moore, 635; *S. C.* 1 Brod. & Bing. 289; Gow, 123. *Mason* v. *Waite*, 17 Mass. 560. But the report states that there was no evidence offered, nor was it contended at the trial, that they had any knowledge of the fraudulent conduct of Abbott, but it was conceded that they were wholly innocent parties.

As to them, therefore, assuming the truth of the facts which they offered to prove, the case stands thus: They held a valid debt against Abbott. The assignment by Abbott to them was made in consideration of that debt, and to secure the payment thereof. The previous existence of the debt does not make the assignment the less a conveyance for value. *Blanchard* v. *Stevens*, 3 Cush. 162. *Culver* v. *Benedict*, 13 Gray, 7. *Ives* v. *Farmers' Bank*, 2 Allen, 236. *Railroad Co.* v. *National Bank*, 102 U. S. 14, 58, 59. There is no question of the validity or of the genuineness of the assignment. Having been made after the fire, and after the amount of the loss had been adjusted between the plaintiffs and Abbott, it was in legal effect an assignment of a claim of Abbott upon the plaintiffs for a certain sum of money. That claim, not being negotiable in form, could not have been sued by these defendants except in Abbott's name, and subject to any defences which these plaintiffs had against him. But the plaintiffs, at Abbott's request, and without any suit, paid the amount of the loss, as adjusted between themselves and Abbott, directly to these defendants, who were wholly ignorant and innocent of the fraud of Abbott.

The plaintiffs do not stand in the position of resisting a claim of Denny, Rice & Company on an alleged promise of the plaintiffs, in which case Denny, Rice & Company would have to prove a valid contract of the plaintiffs to pay to them or to Abbott, their assignor. But the plaintiffs are seeking to recover back from Denny, Rice & Company a sum of money which the plaintiffs have voluntarily paid to them, and which the plaintiffs assert to be wrongfully withheld from them by these defendants, and which they are therefore bound to prove that, as between these parties, the plaintiffs have the better right to, and it is inequitable and unjust that these defendants should retain.

The only contract of the plaintiffs was with Abbott, and the only mistake was as between them and him. The money was voluntarily paid by the plaintiffs in discharge of Abbott's supposed claim upon them under their policy, and to these defendants as the persons designated by Abbott to receive it, and was in legal effect a payment by the plaintiffs to Abbott. These defendants received the money, not in satisfaction of any promise which the plaintiffs had made to them, (for the plaintiffs had made no such promise,) but under the agreement of Abbott with these defendants that they might receive it from the plaintiffs and apply it to the satisfaction of Abbott's debt to themselves. In other words, the money was paid by the plaintiffs to these defendants, not as a sum which the latter were entitled to recover from the plaintiffs, but as a sum which the plaintiffs admitted to be due to Abbott, under their own contract with him, and which at his request and in his behalf they paid to these defendants, who at the time of receiving it knew no facts tending to show that it had not in truth become due from the plaintiffs to Abbott. This payment by the plaintiffs to these defendants at Abbott's request was a satisfaction of Abbott's debt to these defendants, and might have been so pleaded by him if sued by them upon that debt. *Tuckerman* v. *Sleeper*, 9 Cush. 177. As between the plaintiffs and these defendants, there was no fraud, concealment or mistake. These defendants had the right to receive from Abbott the sum which was paid to them. The assignment which they presented to the plaintiffs was genuine, and was all that it purported to be. They hold the money honestly, for value, with the right to retain it as their own, under a title derived from Abbott, and independent of the fraud practised by him upon the plaintiffs.

The case stands just as if the money had been paid by the plaintiffs to Abbott, and by Abbott to these defendants, in which case there could be no doubt that, while the plaintiffs could recover back the amount from Abbott, neither Abbott nor the plaintiffs could recover the amount from these defendants. The fact that the money, instead of being paid by the plaintiffs to Abbott, and by Abbott to these defendants, was paid directly by the plaintiffs to these defendants, does not make any difference in the rights of the parties. The two forms do not

differ in substance. In either case, Abbott alone is liable to the plaintiffs, and these defendants hold no money which *ex æquo et bono* they are bound to return either to Abbott or to the plaintiffs.

The case does not differ in principle from one in which B., having made a contract for the sale of goods in his possession to A., afterwards, by A.'s direction, actually delivers them to C., who has purchased them from A. in good faith for a valuable consideration as between A. and C., the nature of which is known to B., and B., upon subsequently discovering that the sale from himself to A. was procured by A.'s fraud, undertakes to recover the goods or their value from C.; or from a case in which a bank, having at the request of a debtor paid money to his creditor upon a bond or a check, under the mistaken supposition that the bond is secured by mortgage of property of the bank, or that the bank has funds of the debtor sufficient to meet the check, seeks to recover back the money so paid.

In *Aiken* v. *Short*, 1 H. & N. 210; *S. C.* 25 L. J. (N. S.) Ex. 321; the action was brought by the public officer of a bank against an executrix to recover back money paid to her under the following circumstances: George Carter had made to the defendant's testator a bond secured by equitable mortgage on property devised to him by Edwin Carter; and had afterwards conveyed the same property to the bank, the latter agreeing to pay the bond. The defendant applied to George Carter to pay the bond, and was referred by him to the bank, which, conceiving that the defendant had a good equitable charge, paid the debt to get rid of the charge affecting its own interest. By the discovery of a later will of Edwin Carter, it turned out that George Carter had no title to the property, and consequently that the defendant had no title, and the bank had none. It was held that the bank could not recover back the money which it had paid to the defendant.

Chief Baron Pollock, according to Hurlstone and Norman's report, after stating the facts of the case, said: " The bank had paid the money, in one sense, without any consideration, but the defendant had a perfect right to receive the money from Carter, and the bankers paid for him. They should have taken care not to have paid over the money to get a valueless security; but

the defendant has nothing to do with their mistake. Suppose it was announced that there was to be a dividend on the estate of a trader, and persons to whom he was indebted went to an office and received instalments of the debts due to them, could the party paying recover back the money if it turned out that he was wrong in supposing that he had funds in hand? The money was in fact paid by the bank as the agents of Carter." 1 H. & N. 214. By the similar but fuller report in the Law Journal, it appears that the Chief Baron, after observing that the bankers "had paid the money, no doubt, in one sense, without any consideration," added, "What is that to the defendant, who received it, having a perfect right to receive his [her] money from somebody, that is, from George Carter? And I think the bankers must be considered rather as paying it for George Carter, and they ought to have taken care that they did not pay in their own wrong when they paid it. It appears to me that this does not at all fall within any case whatever deciding that money may be recovered back because it has been paid under a mistake." 25 L. J. (N. S.) Ex. 323.

Barons Platt, Martin and Bramwell were of the same opinion. Baron Platt said, "The action for money had and received lies only for money which the defendant ought to refund *ex æquo et bono ;*" and, after stating the other facts, said, "Carter referred her to the bank, who paid the debt, and the bond was satisfied. The money which the defendant got from her debtor was actually due to her, and there can be no obligation to refund it;" 1 H. & N. 214, 215; or, according to the fuller report, "He refers her to the bank. They, acting as his agents, upon being referred to, pay his debt. How can that be properly recoverable? Surely the debt is satisfied. The debt was due. It is not as though there were no debt due, and there was a mistake of fact; but here the debt was actually due, and the money was paid to satisfy that debt. It appears to me clear, beyond all question, that this money cannot be recovered back." 25 L. J. (N. S.) Ex. 324. Baron Martin said, "The case comes to this: If I apply to a man for payment of a debt, and some third person pays me, can he recover back the money because he has paid it under some misapprehension?" 1 H. & N. 213, 214.

In *Chambers* v. *Miller*, 13 C. B. (N. S.) 125; *S. C.* 32 L. J. (N. S.) C. P. 30; the plaintiff presented at the defendants' bank a check drawn on them by a customer, and received the money; and after he had counted it over once, and while he was re-counting it, the defendants, having meanwhile discovered that the customer's account was overdrawn, forcibly detained the plaintiff, compelled him to give up the money, and returned the check to him; and he brought an action against them for assault and battery. Chief Justice Erle at the trial ruled that the property in the money had passed to the plaintiff, and consequently that the defendants' justification failed; and his ruling was confirmed by the court in banc. The question whether the defendants had a right to take back the money by force, though mentioned by some of the judges, was not reserved or decided. See especially 32 L. J. (N. S.) C. P. 31, note.

The ground assigned for the decision by Chief Justice Erle and Mr. Justice Williams was, that the money, having been once paid by the bankers to the payee of the check, became irrevocably his, and they could not have recovered it back from him in an action for money had and received, because as between them and him there was no manner of mistake, for the check was genuine, and the money was due from the drawer to the payee, and the mistake as to the amount of the drawer's funds in the hands of the bankers was a mistake as between him and them only, with which the payee had nothing to do. The Chief Justice distinguished the case from that of *Kelly* v. *Solari*, above cited, in that "there the money was paid to a party who had no right to it whatever, and the mistake was between the parties themselves as to the money being due." 32 L. J. (N. S.) C. P. 33. The like distinction was taken in *Hull* v. *South Carolina Bank*, Dudley, 259, 262, and in *Guild* v. *Baldridge*, 2 Swan (Tenn.) 295, 303.

So in *Pollard* v. *Bank of England*, L. R. 6 Q. B. 623, Lambton & Company, bankers, under the mistaken belief that they held funds of the acceptor of a bill of exchange, paid the amount of the bill to the Bank of England, which had discounted the bill for the drawer; and it was held, in a considered judgment delivered by Mr. Justice Blackburn, in behalf of himself and Chief Justice Cockburn and Justices Mellor and Lush, that

Lambton & Company could not recover back from the Bank of England the amount so paid, and that the Bank of England therefore held the amount on the drawer's account.

For these reasons, the court is of opinion that, assuming the truth of the facts of which evidence was introduced by the defendants, the plaintiffs may maintain the action against Abbott, and not against Denny, Rice & Company.

In any view of the case, Denny, Rice & Company and Abbott cannot be jointly charged in this action. They have made no joint contract with the plaintiffs, nor have they jointly received money from the plaintiffs. The grounds of liability of the two are distinct. The liability of Abbott to the plaintiffs rests upon the ground that, by reason of his fraud and their mistake, they have at his request paid money to the other defendants for his benefit; and it is independent of the question of the amount of his debt to the other defendants. The liability of Denny, Rice & Company, who were not parties to any fraud or mistake, can rest upon no other ground than their receipt and retention of money to which they have no right, and which, as between them and the plaintiffs, justly belongs to the latter; and this liability cannot exist unless the amount of the debt due from Abbott to them is less than the sum of money which they have received from the plaintiffs. The allegation in the amended declaration, that the money was paid by the plaintiffs for the joint use and benefit of both defendants, is therefore unsupported by the evidence, and the objection on the ground of this variance might be taken by the defendants at the trial. *Manahan* v. *Gibbons*, 19 Johns. 109.

The other four actions are brought against Abbott and the members of the firm of Browne, Steese and Clarke. The only particulars, appearing by the report, in which these cases differ from the first, are that the evidence introduced by the other defendants tended to show that Abbott's debt to them was in part for money advanced by them to him after the fire; that each of the assignments executed by him to them was in form a simple assignment of all his "right, title and interest in this policy, and all benefit and advantage to be derived therefrom;" and that in the fifth case Abbott signed a separate receipt similar to that signed by them, and the check given by the

plaintiffs was payable to the order of Abbott and the other defendants.

But as the evidence introduced, as stated in the report, showed that in all these four cases "the amounts due on the policies as adjusted, assigned to them as aforesaid, were paid to Browne, Steese & Clarke by the insurance companies at the expiration of the sixty days allowed by the terms of the policies, and the money kept by them, and no part of it paid to Abbott," a majority of the court is of opinion that neither the difference in the form of the assignments in the four cases, nor that in the form of the receipts and of the check in one of them, can affect the result; but that the assignment in each case, having been made after the fire, and after the adjustment of the loss as between the company and Abbott, was in legal effect not an assignment of the policy as an existing contract of indemnity against future contingencies, but only an assignment of a claim upon the company for an ascertained sum of money; and that, assuming the truth of the facts offered to be proved by the defendants, this sum, having been paid by the company to Browne, Steese & Clarke, without any fraud or mistake as between them, and not exceeding the amount of the demands of Browne, Steese & Clarke against Abbott, cannot be recovered back from them, but from him only.

The report provides that, if the court should be of opinion that the plaintiffs have no joint cause of action against the defendants, they may elect which of the defendants they will discontinue against, and such further proceedings shall thereupon be had as law and justice may require. The other defendants, in each case, contend that, as Abbott is the only party whose residence or place of business is in the county of Middlesex, the other defendants residing and doing business in Suffolk and the plaintiffs being a foreign corporation, therefore, if the plaintiffs elect to discontinue against Abbott, the defendants should be entitled to the same right to move to dismiss, or plead in abatement, that they would have had if the action had originally been brought against them alone, and they propose to plead in abatement that, as between them and the plaintiffs, the action is brought in the wrong county. Gen. Sts. c. 123, § 1. But the action was rightly brought in the county in which one of

the defendants resided, and the case has been fully tried on the merits, without objection being taken to the venue by motion to dismiss or answer in abatement. The statutes provide that amendments discontinuing as to any joint plaintiff or defendant may be allowed at any time before final judgment, that judgment shall not be arrested in any civil action by reason of a mistake of venue; and that judgment may be entered against such defendants as are found on the trial to be liable on the contract declared on, notwithstanding it is found that all the defendants are not jointly liable thereon. Gen. Sts. *c.* 129, §§ 41, 79; *c.* 146, § 4; *c.* 133, §§ 5, 6. And the court is not ousted of its jurisdiction of a transitory action, once acquired by service upon a defendant residing in the county, by a failure to recover against him at the trial. *Lucas* v. *Nichols*, 5 Gray, 309. The plaintiffs are therefore entitled, pursuant to the leave reserved in the report, to elect to prosecute their action against either defendant.

Under the rulings at the trial, the facts which the evidence introduced by the other defendants tended to show, as to the validity and amount of Abbott's debts to them, became immaterial, and were not passed upon by the jury, and the plaintiffs are entitled, if they so elect, to a new trial for the purpose of determining these facts. If, for this purpose, they elect further to prosecute either action against the other defendants, they must discontinue against Abbott; and neither the question of Abbott's fraud, which has been fully tried and settled by the verdict, nor the question of the other defendants' innocence of that fraud, which was conceded at the former trial, is to be open upon the new trial. *Winn* v. *Columbian Ins. Co.* 12 Pick. 279. *Robbins* v. *Townsend*, 20 Pick. 345. *Bardwell* v. *Conway Ins. Co.* 118 Mass. 465. If, on the other hand, the plaintiffs elect to discontinue against the other defendants, judgment must be entered for the latter, and

*Judgment for the plaintiffs against Abbott alone.*

The cases were argued in February 1879, by *H. W. Suter*, (*F. Dabney* with him,) for Denny, Rice & Company, by *C. R. Train & E. W. Hutchins*, for Browne, Steese & Clarke, and by *J. P. Treadwell*, for the plaintiffs; and were reargued in March

1881, by *F. Dabney*, (*H. W. Suter* with him,) for Denny, Rice & Company, by *A. S. Wheeler & E. W. Hutchins*, for Browne, Steese & Clarke, and by *W. G. Russell & J. P. Treadwell*, for the plaintiffs.