Hillsborough, }
Oct. 2, 1917. }

### OVID F. WINSLOW & a. v. OLA ANDERSON.

An action cannot be maintained upon a bond given as security for the performance of a contract with the obligee in the absence of evidence that he was damaged by its breach.

A surety upon a bond for the faithful performance of a contract to deliver articles to a certain quantity is not liable upon the bond if upon a settlement between the principal and the obligee a mistake is made in computing the amount delivered and the bond is thereupon surrendered.

Nor is the surety liable to the obligee in such case for overpayment to the principal where the payments by the principal's direction have been made to the surety and applied by him on the principal's general indebtedness.

ACTION AT LAW, brought upon two counts: first, a count in debt upon a bond signed by the defendant as surety; second, a count in assumpsit for money had and received. The plaintiffs' specification is as follows:

"Overpayment on 44,714 blocks under mutual mistake
    in fact on and prior to January 25, 1911, at $27.50
    per M.......................................... $1,229.63
Interest from October 19, 1911, to date...........   237.19
 
Making........................................... 1,466.82"

Trial by jury. At the close of all the evidence the defendant moved for a directed verdict, which was granted, and the plaintiffs excepted. Transferred from the January term, 1915, of the superior court, by *Kivel*, J. The facts sufficiently appear in the opinion.

*Allen Hollis* and *Joseph W. Worthen* (*Mr. Hollis* orally), for the plaintiffs.

*Martin & Howe* (*Mr. Howe* orally), for the defendant.

PLUMMER, J.   This action grew out of a contract for paving-blocks made by the plaintiffs with Otto Anderson, December 29, 1909.   The defendant was surety on a bond given by Otto to the plaintiffs for the faithful performance or fulfilment of the contract. Otto Anderson agreed to deliver upon the cars or upon a plot of land, leased by the plaintiffs, prior to November 1, 1910, 700,000 paving-blocks for thirty dollars per thousand; delivery to be upon the plaintiffs' written order, the plaintiffs to pay 75 per cent of the agreed price upon the acceptance of the blocks as delivered, and the balance after the blocks were laid; but in any event to pay the full price of all blocks accepted by them, by December 1, 1910.   The contract further provided that, in case of Otto's failure to deliver blocks as ordered, the plaintiffs should have the right to purchase such blocks elsewhere at Otto's expense.   Otto shipped all the blocks ordered.   He also delivered on the leased land other blocks. From time to time Otto furnished the plaintiffs memoranda made up from his cutters' returns of the blocks so delivered.   These were accepted by the plaintiffs, and payment made in accordance with the contract.   Before any payments were made, Otto directed them to be made to the defendant, and all payments were made by check to the defendant, who used all the money in Otto's business, retaining none for his own use.   Otto did not furnish 700,000 blocks before November 1, and the plaintiffs did not order that number, as the contract required they should.   Sometime after December 1, the parties adjusted the matters under the contract, and the bond was returned to the defendant, and destroyed.   At the time of this settlement it was understood that Otto had delivered on the leased land 138,100 blocks besides those which had been shipped.   On these blocks in accordance with the contract the plaintiffs had paid 75 per cent of the purchase price, and were then obligated to pay the balance, but by agreement between them and Otto, they paid him five dollars more per thousand for the 138,100 blocks, and retained two dollars and fifty cents per thousand for expense of loading and shortage until the blocks should be shipped on the cars the following spring.   Upon this basis the accounts between the parties were computed, and a balance of $1,046.39 found to be due Otto, and a check for that sum was made out to the defendant, and delivered to him.   This payment was made January 25, 1911. In loading the blocks upon the cars in the following September, a shortage of 44,714 blocks was discovered.   As the two dollars and fifty cents per thousand reserved for that purpose was insufficient

to meet a deficit of this extent, the plaintiffs brought this suit against the defendant, and claimed to recover the overpayment: *first,* in an action of debt on the bond; and *second,* in a count in assumpsit for money had and received. Under the count in debt the plaintiffs state their claim as follows: (1) "The bond is valid despite its destruction under a mistake of fact. . . ." (2) "The contract secured by the bond was broken. That contract was a severable contract to supply as many of 700,000 blocks as were duly ordered. . . . Under that contract, then, as secured by the bond, Otto Anderson owed the plaintiffs 604,000 blocks. To the extent of Otto's default the defendant is liable to plaintiffs on the bond."

Conceding these positions to be well taken, the case furnishes no evidence upon which to rest a judgment against the defendant upon the bond. Conceding that there was a failure to furnish 44,714 blocks, so as to constitute a breach of the bond, there is no evidence that such breach damaged the plaintiffs, or any claim that such shortage was an injury to them. The contract gave the plaintiffs the right in case of such shortage to purchase the blocks elsewhere at Otto's expense. The defendant's liability was to make up the excess between the price paid and the contract price. If the plaintiffs secured all they wanted at less than the contract the breach was a benefit, not a damage to them. In the absence of any evidence of damage recoverable under the bond, it is not useful to discuss the possibility of recovery, if damage were shown.

The parties gave up the bond because the delivery of paving-stones under the contract secured by it was understood to be at an end. Absence of error in computation and settlement of their mutual accounts was not secured by the bond. If such had been understood to be the purpose of the bond, the exact phraseology of which does not appear, the plaintiffs would not have surrendered the document until the verity of their accounting had been demonstrated. The plaintiffs' obligation was to pay upon the acceptance of the blocks, the amount to be computed upon the count on the land, or aboard the cars. The bond was not, so far as appears, made to secure accuracy of count in either party. The plaintiffs could compute the number of blocks themselves before paying for them, or take Otto's account. They chose to take Otto's account, and settled on that basis. For this the defendant is not responsible.

The plaintiffs further contend that they are entitled to recover on their count for money had and received for the overpayment

which they made, because such payment was caused by a mistake between the plaintiffs and Otto Anderson in settling their accounts. An action for money had and received "is an equitable action and may, in general, be maintained whenever the defendant has money belonging to the plaintiff which in equity and good conscience he ought to refund to him." *McDonald* v. *Insurance Co.*, 68 N. H. 4, 6. Can it be said that the case at bar is of this character? The overpayment was occasioned by reason of the plaintiffs' paying Otto for paving blocks that he did not deliver to them. Otto made returns to the plaintiffs, showing that he had delivered 138,100 blocks to the plaintiffs that had not been shipped. Relying on these returns, the plaintiffs settled with him, paying twenty-seven dollars and fifty cents per thousand on the 138,100 blocks. After-wards, when the plaintiffs counted the blocks, it was found that there was a shortage of 44,714. The defendant had nothing to do with the settlement made between the plaintiffs and Otto; he was present when the final settlement was consummated between them, but he made no representations in reference to the number of blocks on hand, and knew nothing about it. The plaintiffs relied upon the returns and statements of Otto, which were honestly made but turned out to be erroneous. The overpayment was made by checks which were payable to the defendant in accordance with the order given by Otto to plaintiffs when the contract was signed. The checks were made to the defendant but the plaintiffs took a receipt for the checks from Otto. In legal effect the money was paid to Otto, and by him to the defendant. *Atwell* v. *Jenkins*, 163 Mass. 362; *Walker* v. *Conant*, 69 Mich. 321; *Southwick* v. *First Nat'l Bank*, 84 N. Y. 420, 436. The checks for the overpayment were rightly received by the defendant, and applied to the payment of Otto's debts and obligations, for some of which the defendant was holden, but the application of some of the money received from the over-payment may have been to pay Otto's pay roll and the running expenses of his business for which the defendant was not holden. For it was the custom of the defendant when he received payments from the plaintiffs to return to Otto enough to pay his help and other current business expenses, and to apply the balance to Otto's debts. About the time the contract was made the defendant sold to Otto one half and leased the other half of his quarry, tools, build-ing and appliances. Otto owed the defendant from the inception of the contract until they settled February 4, 1911, $1500 directly, and he indorsed notes for Otto at the bank upon which there was

due on the above date some $1300. When they made a settlement the defendant suffered a loss. The defendant's settlement with Otto of all matters between them was made months before the plaintiffs demanded that he should return to them the overpayment which they had made on account of the mistake between themselves and Otto. Under these circumstances the defendant cannot be compelled to refund to the plaintiffs the amount of the overpayment. "When . . . a bill is paid to one who holds it in good faith and for value, he should not be called upon afterward to account for the money paid, perhaps, at a distant time or place after the accounts with the drawers have been settled and closed; upon proof that in transactions between the drawees and drawers, of which the holder has no knowledge or means of knowledge, there has been some fraud, or wrong, or mistake to the injury of the drawees." *Southwick* v. *First Nat. Bank, supra; Justh* v. *Nat. Bank,* 56 N. Y. 478, 484; *Goshen Nat. Bank* v. *State,* 141 N. Y. 379, 385; *Rankin* v. *Chase Nat. Bank,* 188 U. S. 557, 565. "To permit in every case of the payment of a debt an inquiry as to the source from which the debtor derived the money, and a recovery if shown to have been dishonestly acquired, would disorganize all business operations and entail an amount of risk and uncertainty which no enterprise could bear. The rule is founded upon a sound general policy as well as upon that principle of justice which determines as between innocent parties upon whom the loss should fall under the existing circumstances." *Hatch* v. *Fourth Nat. Bank,* 147 N. Y. 184, 191, 192; *Gammon* v. *Butler,* 48 Me. 344; *Lime Rock Bank* v. *Plimpton,* 17 Pick. 159; *Nassau Bank* v. *Nat. Bank,* 159 N. Y. 456. "As between the payor and the payee there is no mistake which affects the validity of the transaction. One receiving money or negotiable securities in payment of or as security for an existing debt is not bound to inquire where the money or securities were obtained. It is better that money or a negotiable security, passing from hand to hand to one who rightly receives it for a valuable consideration, should carry on its face its own credentials." *Spaulding* v. *Kendrick,* 172 Mass. 71, 72.

The case of *Merchants' Insurance Co.* v. *Abbott,* 131 Mass. 397, 401, is very similar to the present action. In that case the plaintiffs had insured Abbott's mill. The mill was burned and the loss was adjusted; whereupon Abbott assigned to Denny, Rice & Co., who were the real defendants in this action, the amount due upon such adjustment, which amount was paid to Denny, Rice & Co. in payment

of a debt due to them from Abbott.  More than a year after-
wards the plaintiffs learned that the mill was burned with the knowl-
edge and at the instigation of Abbott, and that his proofs of loss
were false and fraudulent.  Denny, Rice & Co. had no knowledge
of any fraud and were wholly innocent parties.  It was held that
the payment made to Denny, Rice & Co. could not be recovered
back by the plaintiffs.  In his opinion, *Gray*, C. J., said: "The
only contract of the plaintiffs was with Abbott, and the only mis-
take was as between them and him.  The money was voluntarily
paid by the plaintiffs in discharge of Abbott's supposed claim upon
them under their policy, and to these defendants as the persons
designated by Abbott to receive it, and was in legal effect a payment
by the plaintiffs to Abbott.  These defendants received the money,
not in satisfaction of any promise which the plaintiffs had made to
them, (for the plaintiffs had made no such promise), but under the
agreement of Abbott with these defendants that they might receive
it from the plaintiffs and apply it to the satisfaction of Abbott's
debt to themselves.  In other words, the money was paid by the
plaintiffs to these defendants, not as a sum which the latter were
entitled to recover from the plaintiffs, but as a sum which the plain-
tiffs admitted to be due to Abbott, under their own contract with
him, and which at his request and in his behalf they paid to these
defendants, who at the time of receiving it knew no facts tending
to show that it had not in truth become due from the plaintiffs to
Abbott.  This payment by the plaintiffs to these defendants at
Abbott's request was a satisfaction of Abbott's debt to these defend-
ants, and might have been so pleaded by him if sued by them upon
that debt.  .  .  .  As between the plaintiffs and these defendants,
there was no fraud, concealment or mistake.  These defendants
had the right to receive from Abbott the sum which was paid to
them.  The assignment which they presented to the plaintiffs was
genuine, and was all that it purported to be.  They hold the money
honestly, for value, with the right to retain it as their own, under a
title derived from Abbott, and independent of the fraud practised
by him upon the plaintiffs.  The case stands just as if the money
had been paid by the plaintiffs to Abbott, and by Abbott to these
defendants, in which case there could be no doubt that, while the
plaintiffs could recover back the amount from Abbott, neither
Abbott nor the plaintiffs could recover the amount from these de-
fendants.  The fact that the money, instead of being paid by the
plaintiffs to Abbott, and by Abbott to these defendants, was paid

directly by the plaintiffs to these defendants, does not make any difference in the rights of the parties.   The two forms do not differ in substance.   In either case, Abbott alone is liable to the plaintiffs, and these defendants hold no money which *ex aequo et bono* they are bound to return either to Abbott or to the plaintiffs."

The defendant was not a party to the settlement between the plaintiffs and Otto; he received the money paid him by plaintiffs in good faith, and applied it to debts of Otto.   He obtained title to the money rightfully, and cannot be required to repay it to the plaintiffs.

*Exception overruled: judgment for defendant.*

All concurred.