BROOKS, Respondent, v. THOMAN, et al, Appellants.

(256 N. W. 111.)

(File No. 7653. Opinion filed July 30, 1934.)

*Hanten, Hanten & Henrikson,* of Watertown, for Appellant.
*M. Harry O'Brien,* of Highmore, for Respondent.

WARREN, J.  Defendant H. Thoman sold and delivered (net) 422 bushels and 20 pounds of wheat to one J. G. Ryan at Holabird, S. D., who was the owner of a grain warehouse or elevator.  The International Harvester Company of America was the holder of a chattel mortgage upon three-fourths interest in the crops to be grown and harvested upon certain lands in the possession and control of defendant H. Thoman, and which covered the 422 bushels and 20 pounds of wheat sold to J. G. Ryan; the amount of the mortgage being $676.35 and interest.  In addition to the aforesaid wheat sold to Ryan, the defendant Thoman had also sold certain other wheat that was not mortgaged.  On August 12, 1930, the plaintiff, who was at that time in the employ of the said J. G. Ryan as bookkeeper and clerk, in making payment for the said grain, prepared and issued two checks, one for the sum of $422.20 and the other for $516.80.  Both checks were made payable to the order of the International Harvester Company and H. Thoman, drawn on the First National Bank of Highmore, S. D., and were signed J. G. Ryan by M. Brooks.  Both of said checks were indorsed, and the indorsement is as as follows:  "International Harvester Company of America by. T. Askew; Henry Thoman."  They were marked paid August 14, 1930.  There is a controversy between the parties as to the date of the issuance of the checks and also as to whether or not they were issued at Holabird or at Ryan's office in Highmore.  Plaintiff contends that in the issuance of the check for $422.20 she made a mistake, and that instead of computing the price of the wheat, she inserted in the check $422.20 instead of the amount actually due, which should have been only $234.35; the wheat having sold at the agreed price of 55½ cents per bushel, which would amount to the sum of $234.35.  Instead of inserting that amount, she inserted, by a clerical mistake, the figures '422.20," which was the number of bushels and pounds sold and not the amount in dollars.  She therefore made an overpayment in the sum of $187.85.  Her employer asked her to rectify the mistake, which she did, and upon payment he assigned the claim to her.  From the record it appears that H. Thoman and T. Askew, the agent of the International Harvester Company, received the checks and presented them for payment at the bank.  A deposit ticket was prepared in the name of H. Thoman, who received a deposit slip for both checks.  At the same time that the

checks were deposited, there was issued as payment to the International Harvester Company of America a draft for $438.75, after collection charges had been deducted. Shortly after said transaction in the bank, plaintiff claims to have notified the parties that through an error in one of the checks an overpayment of $187.85 had been made and demanded of said parties a repayment thereof. Thereafter an action was brought, the amended summons bearing date of December 8, 1932. The defendant International Harvester Company of America answered and it alone answered and appealed. At the conclusion of the evidence both parties moved for a directed verdict. Plaintiff's motion was granted and defendant International Harvester Company of America has appealed.

From an examination of the record it appears that Thoman and Askew, the agent for the International Harvester Company, called for and received the two checks from M. Brooks, Ryan's bookkeeper; that previously thereto there was an agreement between Thoman and appellant that $300 should be paid upon the indebtedness owing to it by said Thoman and, in addition thereto, $140 that Thoman owed one Lappe for labor in combining Thoman's grain, as Lappe owed appellant on account for machinery, said Lappe assigning to the appellant the amount due him for combining Thoman's grain. The record justifies us fully in believing that this arrangement was made between Thoman and appellant and that, regardless of any lien on account of its chattel mortgage upon certain grains owned by the said Thoman, appellant was to be paid from the grain which had been sold to Ryan. The only question before us is: May respondent recover from appellant International Harvester Company of America? The facts before us indicate that respondent is not entitled to recover. It may be conceded that she gave timely notice of the mistake or error which she had made and had she taken precaution to ascertain and fix the liability at that time she undoubtedly would have recovered her loss from the party who actually received the proceeds of the checks, namely, H. Thoman. It is apparent from the record that Thoman was the only individual entitled to the checks in payment for his grain and that the appellant merely had a lien by virtue of its mortgage. However, under the facts showing the agreement between Thoman and appellant, more money was to be paid to the appellant than was covered by the mortgage lien and,

while the checks were made payable to both parties, that in no way affects or binds the appellant to reimburse respondent for an overpayment to Thoman. Appellant, as we view it, merely made the indorsement on the checks so that Thoman might be paid the money which they represented. Thoman thereupon presented the checks to the bank, not for payment, but for credit at the bank, through the usual formalities, and received a deposit slip showing that there had been deposited to his credit the amounts of the two checks. Involved in the same transaction there was issued to the appellant a draft by the bank for the sum of $440 less service charge. That operation dispensed with Thoman's drawing a check to appellant for the amount that he had agreed to pay it. In other words, by the issuance of the draft by the bank to the appellant it operated against Thoman's credit at the bank just as effectively as though Thoman had drawn a check payable to appellant for the agreed amount. Appellant and Thoman did not receive cash at the bank, but Thoman obtained credit at the bank and paid appellant by draft out of the credit that he had received at the bank. The appellant cannot, therefore, be chargeable nor held liable by virtue of the claimed error of respondent.

In a search for authorities dealing with the question of action for money had and received, we have encountered the case of Merchants' Ins. Co. v. Abbott, 131 Mass. 397, which is analogous to the instant case. In that case the court said: "The case stands just as if the money had been paid by the plaintiffs to Abbott, and by Abbott to these defendants, in which case there could be no doubt that, while the plaintiffs could recover back the amount from Abbott, neither Abbott nor the plaintiffs could recover the amount from these defendants. The fact that the money, instead of being paid by the plaintiffs to Abbott, and by Abbott, to these defendants, was paid directly by the plaintiffs to these defendants, does not make any difference in the rights of the parties." A later case, Gaffner v. American Finance Co. et al, 120 Wash. 76, 206 P. 916, 28 A. L. R. 624, quotes with approval from the Abbott Case and further cites the following cases: Ball v. Shepard, 202 N. Y. 247, 95 N. E. 719; Behring v. Somerville, 63 N. J. Law, 568, 44 A. 641, 49 L. R. A. 578; Brand v. Williams, 29 Minn. 238, 13 N. W. 42; Winslow v. Anderson, 78 N. H. 478, 102 A. 310, L. R. A. 1918C, 173.

Harmonizing the facts and the rule of law announced in the foregoing decisions with the facts before us in the instant case and being unable to discover, and respondent having failed to cite, any cases which hold to the contrary, it necessarily follows that we must apply the rule and reasoning stated in the foregoing cases to the facts before us.

The order and judgment appealed from are reversed, and respondent's cause of action against appellant is dismissed.

POLLEY, J., concurs.

ROBERTS, P. J., and CAMPBELL and RUDOLPH, JJ., concur in result.