ISRAËL BOWEN, Individually and as Executor, etc., of ISAAC W. POTTER, Deceased, and Others, Respondents,. *v.* JULIUS BECHT, MARY A. COULTER, Individually and as Executrix, etc., of HENRY COULTER, Deceased,. and THOMAS BAILEY, Appellants.

*Practice — trial of a specific question by a jury in an equitable action — when an order granting or refusing a new trial in, is appealable — Code of Civil Procedure, sec. 1347, sub. 2; sec. 1003.*

Subdivision 2 of section 1347 of the Code of Civil Procedure, provides that appeals may be taken to the General Term of the Supreme Court from an order granting or refusing a new trial, "except that where specific questions of fact, arising upon the issues in an action triable by the court, have been tried by a jury, pursuant to an order for that purpose as prescribed in section 971 of this act, *an appeal cannot be taken from an order granting or refusing a new trial upon the merits.*"

*Held,* that the prohibition against appealing from an order "upon the merits" was intended to limit and restrict the consideration of the effect of the evidence to the jury and to the court before which an application. to set aside the verdict and for a new trial might be made under the provisions of section 1003 of the said Code.

That it was not designed to extend beyond a review of the effect of the evidence bearing upon the issue tried.

That the exception was not intended to prevent the review, by appeal, of rulings made by the justice presiding at the trial before the jury, by which proper evidence was rejected, or improper evidence received, or unsound rules applied to the consideration of the evidence in the submission of the case to the jury.

That where such erroneous rulings have been made, and the verdict in part influenced by them has been made the basis of the final recovery, a new trial should be ordered, despite the provisions of section 1003 of the said Code, declaring that "an error in the admission or exclusion of evidence, or in any other ruling or direction of the judge upon the trial, may, in the discretion of the court which reviews it, be disregarded if that court is of opinion that substantial justice does not require that a new trial should be granted."

*Matter of Smith* (95 N. Y., 516) followed.

Where such erroneous rulings have been made by the justice presiding at the trial before the jury of the specific questions referred to them, and it appears from the decision of the justice before whom the issues in the action were tried at Special Term, and from the judgment entered thereon, that the findings of the jury upon the questions submitted to them were considered by him in arriving at his decision, the judgment will be reversed.

Appeal from a judgment in favor of the plaintiffs, recovered on a trial at the Special Term, and from orders denying motions for a new trial.

*Luther R. Marsh, George W. Stevens* and *Wheeler H. Peckham,* for the appellants.

*Edward M. Shepard,* for the respondents.

DANIELS, J.:

This action was commenced in May, 1878, by Isaac W. Potter, the testator, to set aside and annul a confirmatory deed made and executed by him on or about the 11th of March, 1876, and other instruments which he executed during the spring of that year. The deed by its terms confirmed the title of the defendant Mary A. Coulter to five lots of land situated on the corner of One Hundred and Sixty-first street and Tenth avenue and Kingsbridge road in the city of New York. He had acquired the title to these lots by conveyances directly to himself in the years 1858 and 1859, and held it until the 7th of June, 1860, when a deed conveying it to the defendant Mary A. Coulter was executed by him. He also at the same time executed and delivered to Henry Coulter, the husband of Mary A. Coulter, a mortgage upon the same property to secure the sum of $5,450. It was afterwards alleged by him that he had been induced to execute this deed and mortgage by false and fraudulent representations made to him by Henry Coulter, who was the husband of Mary A. Coulter, his sister, and an action was commenced in the year 1871 to avoid this deed and secure the re-conveyance of the property to himself. After issue was joined in that action it was brought to trial in the year 1874 and a judgment was recovered by him adjudging the deed to be fraudulent and void and canceling and setting it aside, and requiring Mary A. Coulter to reconvey the property to the plaintiff Isaac W. Potter. He also recovered the sum of $1,899.43 for costs in the action. The defendant Coulter appealed from the judgment to the General Term of this court, and that appeal was pending in the spring of 1876. By the papers which were then executed by Potter he also discharged this judgment and agreed to its reversal and the dismissal of the complaint. And he in like manner released to Mary A. Coulter an award made in his favor for a portion of the premises taken to widen the Kingsbridge road. He likewise consented to the discontinuance of an action which he was also prosecuting to set aside and annul the mortgage given to Henry Coulter.

Under the authority of these instruments a formal order of reversal of the judgment recovered against Mary A. Coulter was entered and the complaint was dismissed; and it was to restore the judgment itself, so far it established his rights to the property, and to set aside and annul the second deed to Mary A. Coulter, that this action was commenced and prosecuted by him. To sustain it, he alleged that he entered into an agreement with the defendants, Mary A. and Henry Coulter, to release her from the costs recovered against her by the judgment in his favor; and for that release it was agreed that he should remain the owner of the five lots of land, and that these defendants should have no further interest therein. The effect of the agreement alleged to have been made, if it had been carried out, would have been to discharge or release the mortgage executed to Henry Coulter, and to restore the title to the lots to the plaintiff Potter, and discharge the defendant Mary A. Coulter from the costs recovered against her by the judgment in his favor. This was not done by the papers which were executed, but her title to the property was in form confirmed, and the right of the plaintiff Potter to the residue of the judgment, as well as to the award, was released. This he alleged he had been induced to do by fraudulent misrepresentations of the papers presented to him to carry his agreement into effect; that his health had then become impaired and his mind was weak, and he did not understand the nature of the instruments presented to him for his signature, and subscribed them upon the representation of Henry Coulter that they were the papers or instruments required to perform and carry out the agreement which had been made. And it was upon the allegation that he had been deceived and defrauded in this manner that his action was brought to annul and set aside these instruments. These defendants denied all allegations of fraudulent misconduct, and alleged the instruments which were executed to have been understandingly and intentionally given by the plaintiff Potter to perform an agreement to that effect entered into by him.

When the action was brought before the court for trial the judge presiding directed certain specific questions to be first tried by a jury. These presented the issues as to the nature and effect of the agreement made; the knowledge of Potter of the contents and

effect of the deed and other papers executed by him between the 11th of March and 20th of May, 1876; and the truth of the allegations that he had been induced to execute the deed and these papers by false and fraudulent representations and through the exercise of undue influence on the part of these defendants. The jury answered each of the four inquiries favorably to the plaintiff, and in that manner determined the important facts upon which the action was founded, as they had been alleged to be by him. But during the trial evidence was· admitted and rejected, and rulings were made, which the defendants relied upon as erroneous, in support of their motion for another trial of these issues. Their application to set aside the verdict, and for an order directing 'a further trial, was made upon two occasions preceding the final trial of the action. The motions were denied, and from the orders denying them the defendants have appealed.

It has also been insisted, in support of these appeals, that so much of the case as was submitted to the jury was improperly determined upon the merits in favor of Potter. But this point cannot be considered on this appeal, for by subdivision 2 of section 1347 of the Code an appeal upon the merits has been prohibited from an order granting or refusing a new trial, after the trial of issues in an action, where neither party is entitled as a matter of right to a trial by jury. This was an action of that description. It was equitable in its form and to be tried by the court, unless an order for the trial of one or more questions of fact arising upon the issues, by jury, should be made by the court under the authority of section 971 of the Code. It is such an order that was made, and after the trial had taken place under it, the only manner in which the merits of the part of the controversy submitted to the jury could be re-examined or reconsidered, was by a motion for a new trial under the authority of section 1003 of the Code, required to be made before the recovery of the judgment. (*Chapin* v. *Thompson*, 80 N. Y., 275.)

That part of subdivision 2 of section 1347 which has prohibited an appeal from the order upon the merits, has not undertaken to define precisely what is to be understood as the merits referred to. But as the language has been there employed, it probably was not designed to extend beyond the effect of the evidence appearing

upon the trial of the issues. Its language does not require that a more extended signification than that should be given to it, and that is probably all that was designed by it in the enactment. It was to limit and restrict the consideration of the effect of the evidence to the jury and the court before which the application to set aside the verdict, and for another trial, should be made. By this restriction of the authority no very great risk of injustice should ordinarily arise, inasmuch as it has been held that the previous equity practice is still applicable to the determination of such issues, empowering the court to determine their effect by modifying or disregarding them altogether. (*Carroll* v. *Deimel*, 95 N. Y., 252.)

By subdivision 2 of section 349 of the preceding Code, unrestricted power of review over all orders granting or refusing a new trial was secured to the court, and the exception of the consideration of the merits in verdicts of this description was first made by the enactment of the Code of Civil Procedure. This exception, as already suggested, should not be so broadly construed, however, as to exclude the power to consider rulings made, by which proper evidence may have been rejected or improper evidence received, or unsound rules applied to the consideration of the evidence in the submission of the case to the jury. For these rulings would have the effect of preventing the merits of the controversy, as it should be made to appear, from being considered by the jury in arriving at their verdict. The exception contained in the Code of Civil Procedure requires no more extended construction from its language, and it could not have been its design to exclude the re-consideration of these important subjects upon an appeal from the order. To construe it otherwise would be the source of very great injustice, affecting the disposition of important rights brought before and to be determined by the courts, for it might very well result in sanctioning the exclusion of important as well as controlling evidence pertinent to the consideration of the issues, from the knowledge of the jury, and in that manner resulting in radical as well as disastrous injustice. The same consequence might likewise follow from the introduction and application of improper evidence, or from the application of unsound rules for the consideration and effect of the evidence, and it should require more clear and explicit language than that creating this exception to sanction and maintain a toleration of radical errors

of this description, by placing them beyond the power of an appellate tribunal to review. The language employed requires no such construction, and it should not be given to it. But the exception made to the right of appeal should be limited to that class of cases where alone the effect of the evidence might be intended to be drawn into consideration. And by that construction the legal points may still be presented as they should be, and as that was allowed by the practice preceding the enactment of the present Code ( *Vermilyea* v. *Palmer*, 52 N. Y., 471, 477), and it has since been followed in *Browne* v. *Murdock* (12 Abb. N. C., 360). The point, therefore, is before the court whether improper rulings in either of the respects alluded to were made to the prejudice of the defendants upon the trial. For if they were, and the verdict in part produced by them was made the basis of the final recovery against the defendants, then another trial should be ordered, notwithstanding the very broad language of section 1003 of the Code of Civil Procedure, declaring that "an error in the admission or exclusion of evidence, or in any other ruling or direction of the judge upon the trial, may, in the discretion of the court which reviews it, be disregarded, if that court is of opinion that substantial justice does not require that a new trial should be granted." A point somewhat similar to this arose under another section of the Code in *Matter of Smith* (95 N. Y., 516), where it was still held that if "the evidence erroneously admitted, or rejected, was important and material, and the court cannot say that, notwithstanding the error, the judgment is right, or if it entertains a reasonable doubt upon the subject, then we conceive a case is presented where the party excepting was necessarily prejudiced within this section. He was deprived of the opportunity of having his case decided upon the competent and material facts, and it is not a just answer to say that on a retrial the same conclusion may possibly be reached." (Id., 527.)

As has been already mentioned, the foundation of Potter's right to maintain the action was his ability to prove that the deed and papers in controversy in this action had been fraudulently obtained from him. And it was a pertinent subsidiary inquiry in the investigation of the charge whether he had been, in fact, the owner of these lots of land, or whether, as it was claimed by the defendants

Coulter, they had been paid for by Henry Coulter, and he had defrayed the expenses of their improvement, and placed the title in Potter as a temporary matter of convenience. If the defendants were right in the assertion made by them, that Henry Coulter, in fact, paid for the property, then the probability of Potter being deprived of its title by fraudulent representations, charged to have been made by Coulter, would be materially diminished. And it was, accordingly, an important circumstance for the defendants to make proof of this fact, if they had the ability to do so. For that purpose they made the following offer : We offer to show that all the purchase-money for these premises was paid by this witness and his wife, and not a cent by Isaac W. Potter ; and that all of the money for the buildings, and the improvements on those premises since, have been paid by this witness and his wife, and not a cent by Potter ; which was objected to by the plaintiffs, excluded by the court, and the defendants excepted to the ruling excluding it. This was manifestly an erroneous ruling, rendered still more evident by the circumstance that the judgment in the preceding action recovered by Potter against Mary A. Coulter had been read in evidence, containing the finding of fact that the purchase-money for the premises had been paid by Potter. This judgment had been reversed by an order complained of in this action, but still the judgment, together with the findings of the court and the pleadings in the action, were allowed to be read in evidence. And by their production they placed before the jury this conclusion of fact, as well as the additional one that Henry Coulter had obtained the original deed from Potter by means of fraudulent representations made to him and inducing its execution.

In the submission of the case to the jury the court was requested to charge as follows : "Although, by the judgment of 1874, it was adjudged that Mr. Potter was the owner of the premises, and that the deed from him to Mrs. Coulter of 1860 was fraudulent and void, that judgment has been reversed, and now furnishes no evidence to this jury that such was in fact the case. The presumption of law is that the judgment of reversal of 1876, by which Mr. Potter's complaint was dismissed, was the correct one."

But the learned judge failed to do so, but charged the proposition as it was presented, unless the reversal of the judgment had been

obtained by fraud. And to that an exception was taken, as well as to the refusal to charge the proposition itself. This constructively left the jury at liberty to consider the effect of the judgment in the preceding action with the qualification suggested by the court, and which may very well have misled them in determining the use that might properly be made of the judgment-roll. Certainly until they should find the fact that the judgment had been reversed through the instrumentality of a fraudulent device, they could have no legal liberty to refer to or make use of it. For its reversal deprived it of all its force and effect as legal evidence between the parties. And that continued to be its nature until it was determined that the agreement for its reversal had been obtained by fraud, and after that the evidence supplied by the judgment would be of no particular practical effect. The proposition which was presented was legally correct, and it should have been submitted to the jury as it was presented, with such further observations as might have been deemed necessary to prevent any possible misconception on the part of the jury as to the use they might make of the judgment.

The defendants objected to proof being given of the collection of the awards for portions of the property which were taken for widening Kingsbridge road, for the reason that no allusion, either to these awards, or to the fact of any of the property having been so taken, or the moneys awarded, was made in the complaint. The property was taken and the awards made in 1874, before the commencement of the action by Potter. And if it had been intended to claim the recovery of so much of these moneys, being the balance of $4,057.07 received and retained by the defendant Mary A. Coulter, some reference to the facts should have been made in the complaint. It was a different subject matter from that relied upon for the support of the action, and the defendants were entitled to be apprised by a statement of the facts that Potter designed to claim, as he very well might if the deed had been fraudulently obtained from him, the recovery of these moneys with the interest upon them. (*Southwick* v. *First Nat. Bank*, 84 N. Y., 420, 429.) The objection to the proof offered was specifically placed upon this omission in the complaint, but it was overruled and the evidence was received, to which the defendants in due time excepted. A proposal was made on the trial to obviate the effect of this objection

by an amendment of the complaint, but that was not permitted, and the proof, because of the deficiency of the complaint in this respect, should not have been received. But it was both received and afterwards acted upon by the court, for, in the judgment which was recovered, Potter was permitted to recover this sum of money, reduced by a payment made in his behalf to his attorney. This was an erroneous disposition of so much of the case upon the weight and effect of evidence not legally admissible. It might, it is true, be measurably corrected by reversing this portion of the judgment, and if the case was otherwise unobjectionable, that course could very well be followed. But as important evidence for the defendants was excluded, and the jury were allowed to consider and dispose of the inquiries presented to them without it, this disposition would be neither just nor equitable. A large number of other objections were taken to rulings upon evidence during the progress of the trial before the jury, and they have been relied upon in support of the appeal, but they do not seem to rest upon so substantial a foundation as to be made the basis of a determination for setting aside the verdict and the judgment. In several instances the objections were taken in the most general form, without indicating the grounds now assigned for their support. And they, therefore, can be of no profitable advantage to the defendants. In other instances, the rulings drawn in question were not improperly made, and for that reason are incapable of affording the least assistance to the defendants.

It has been urged in behalf of the present plaintiffs, who were substituted in the place of Potter after his decease, that upon the final trial before the court, the evidence considered to have been improperly rejected was received and acted upon by the same learned judge who presided at the trial of the issues, and that the error in rejecting it upon the trial before the jury, has, in this manner, been corrected, and that would undoubtedly be the effect if the verdict of the jury had been laid out of consideration as a circumstance tending to determine the final disposition which should be made of the action. But it was not, for upon the final trial it was received by the court under its decision that it could pass upon the whole case and decide it upon the merits, "giving due consideration to the verdict and such evidence as might be

submitted." And that the verdict was made to some extent the foundation of the judgment appears by the decision of the court, as well as by the judgment itself, for in the former the statement has been made that the facts were found "after hearing the proofs and allegations of the parties and the verdict of the jury herein." The judgment proceeds still further and contains a statement of the findings of the jury upon the issues sent to them, and that the final trial took place "upon the said verdict and upon the evidence produced before the said jury, and upon further evidence produced in the first instance upon such further trial at the said Special Term." It has been made entirely evident by these statements that the judgment finally rendered in the action proceeded upon the verdict rendered by the jury as well as the additional evidence produced before the court. The plaintiffs, therefore, were secured the advantage which the verdict could supply that had been obtained by an erroneous trial of the issues. The weight and effect of the errors it was impossible to determine or apportion. How far the verdict may have proceeded upon them can by no intelligible process of reasoning or examination be ascertained. Neither can it be determined how far its effect may have been qualified or restricted by the reception of the evidence on the trial before the court which had been offered and rejected on the hearing before the jury. But so far as the jury may have been influenced in their consideration of the case, by the absence of evidence offered to prove that Coulter had paid the purchase-price for the property, or the omission of the court to give the direction concerning the effect of the judgment which seems to have been correctly requested, their action must have had some weight and effect in the final disposition of the case. The verdict was relied upon to a certain extent at least, how far it cannot be determined, and its effect, and it may have been a vital part of its effect, was allowed to influence the final determination of the action. The errors accordingly arising upon the trial before the jury, were in no manner corrected by what finally took place before the court. But they were perpetuated through the entire proceeding, and an advantage was given to the plaintiffs over the defendants in that manner which they were not entitled to claim. It may very well be that, in this manner, injustice has been done to the defendants

and that injustice can only be corrected by the reversal of the judgment and the orders from which the appeals have been taken, and directing another trial of the action, and such a direction should be given with costs, to abide the event.

BRADY, P. J.:

I concur. I entertain no doubt that a new trial is the right of the appellants. In the trial of issues ordered to be disposed of by a jury, the rules of evidence must be observed as they exist, and cannot be dispensed with, although in some instances a reversal need not follow because harmless evidence was received.

Present — BRADY, P. J., and DANIELS, J.

Judgment and order reversed and new trial granted, with costs to abide event.